698 So.2d 47 (1997)
Patricia Ann MISTICH, et al.
v.
VOLKSWAGEN OF GERMANY, INC., et al.
No. 94-CA-0226.
Court of Appeal of Louisiana, Fourth Circuit.
June 25, 1997.
*49 J. Van Robichaux, Jr., Chalmette, Glenn E. Diaz Chalmette, J. Thomas Anderson, Hammond, and Walter Landry Smith, Baton Rouge, for Plaintiffs/Appellees.
Sessions & Fishman, L.L.P., Robert E. Winn, Joy Goldberg Braun, Sharon Cormack Mize, Raymond P. Ward, New Orleans, for Defendants/Appellants.
Duplass, Zwain & Williams, David J. Bourgeois, Roy E. Sasser, Metairie, for Intervenor/Appellee, Aetna Casualty & Surety Company.
The Louisiana Association Of Defense Counsel, H. Alston Johnson, III, Arthur H. Andrews, Wm. Shelby McKenzie, William H. Howard, III, Baton Rouge, for Amicus Curiae.
Before SCHOTT, C.J., and BYRNES and WALTZER, JJ.
SCHOTT, Chief Judge.
This is a survival and wrongful death action arising out of an automobile accident which occurred on October 8, 1986. The trial court awarded plaintiffs an aggregate of $2,028,530.18 against the Volkswagen as manufacturer of a defective automobile. This court reversed the judgment of the trial court on liability, dismissing plaintiffs' suit against Volkswagen. 94-0226, (La.App. 4 Cir. 1/31/95), 650 So.2d 385. The Supreme Court granted certiorari and reversed this court's judgment. 95-0939 (La.1/29/96) 666 So.2d 1073. However, the Supreme Court declined to review the award, but remanded the case to this court for that purpose.
At the time of the accident, the decedent, Carmen Mistich, was thirty-seven years of age and married since 1967 to Elton Mistich. They had two children, Christopher, then seven, and Patricia, then seventeen years of age. Elton was mildly retarded and totally physically disabled from working because of an accident he had sustained. The children were also mildly retarded. In his reasons for judgment the trial judge noted that the decedent was "her husband's nurse, her children's school tutor, the homemaker, the family's only means of support, and most importantly, the protector of her mentally disadvantaged husband and children."
The judge noted that Patricia had learned to read because of his mother's tutoring while Christopher cannot read because of her absence. Neither child had serious problems while she was alive, but they both developed them since her death. Elton and Christopher have suffered with depression so much so for Christopher that he requires treatment by a psychiatrist and a behavioral tutor. The reasons for judgment continue as follows:
The Court finds that Carmen's death has resulted in the destruction of the quality of life that Elton, Patricia and Christopher enjoyed while she was alive. The adverse impact of Carmen's death on the lives of her husband and children was, and is, devastating. The evidence shows that the Mistich family was a close and loving family, and that the death of Carmen Mistich was more destructive to this family and to their individual lives because of the unique interdependability involved in this matter. Accordingly, the Court will fix damages in the amount of $375,000.00 for Elton Mistich, $275.000.00 for Patricia Mistich, and $275.000.00 for Christopher Mistich.
In addition to these awards the court made further awards of $18,686.00 to Christopher for tutoring and to the three plaintiffs awards of $123,041.00 for loss of the decedent's earning capacity and $134,435.00 for loss of her personal services.
The court found that the decedent was in a coma or a semi-coma for eight weeks after the accident until her death, but that she *50 experienced pain and suffering during this period for which the court awarded $150,000.00.
Finally, the court made a specific award to the estate of the decedent for the decedent's future loss of enjoyment of life, i.e., "Hedonic" damages in the amount of $600,000.00. The trial judge explained this award on the theory that had she lived in a comatose state to sixty-five the defendant would have been responsible for her loss of enjoyment of life and her opportunity to enjoy life which was destroyed as fully and finally by death as by coma. In making this award the court considered the testimony of Dr. Melville Wolfson, an economist, called by plaintiffs, who attempted to quantify this item of damages.
In the judgment rendered by the court the award is for $2,028,530.18 against the defendants and collectively in favor of Patricia Mistich, the estate of the decedent, and Elton Mistich individually, as administrator of the estate, and as tutor of Christopher. The judgment does not separate the recovery in the survival action under LSA-C.C. art. 2315.1 from the recovery in the wrongful death action under C.C. art. 2315.2. However, from the reasons for judgment it appears that the award in the survival action included $150,000.00 for decedent's pain and suffering and $600,000.00 for hedonic damages.
The award in the wrongful death action included the following amounts specified by the trial judge:

Elton Mistich  General Damages $375,000.00
Patricia Mistich  General Damages 275,000.00
Christopher Mistich  General Damages 275,000.00
Tutoring for Christopher Mistich 18,686.00
Loss of decedent's earning capacity 123,041.00
 ___________
Loss of decedent's services 134,435.00

When these figures totaling $1,201,162.00 are added to the $750,000.00 awarded in the survival action and to medical expenses of $77,386.18 which are not in dispute they yield a total of $2,028,548.18 which approximates the $2,028,530.18 which was the lump sum awarded to all plaintiffs in the judgment.
In their appeal defendants argue that the trial court erred in making separate awards for hedonic damages, damages for tutoring and loss of services, and damages for loss of earning capacity. They argue that the evidence does not support the award for decedent's pain and suffering between the accident and her death. They contend that the general damages to the plaintiffs for the wrongful death are excessive. Finally, they challenge the legal interest award on future damages and an award to intervenor, Aetna & Casualty Insurance Company.
In response to defendants' arguments concerning specific components of the judgment plaintiffs contend that the question is whether the total of the judgment is excessive. They argue that even if an item such as loss of earning capacity is questionable when isolated from the judgment as a whole, since the total amount of $2,028,530.00 is not abusive of the trial court's discretion the judgment should not be disturbed on appeal. They would have this court take the approach the court took in Guillory v. Avondale Shipyards, Inc., 83-1570 (La.2/27/84), 448 So.2d 1281, 1287 and treat the specific awards simply as items having overlapping elements in reviewing the total sum awarded.
We decline to take this approach because we are not dealing with elements that merely overlap. We are dealing with specific awards made for specific reasons spelled out by the trial court. The question becomes whether these items are recoverable as a matter of law in general and in the context of the law pertaining to survival and wrongful death actions. If the only question were to determine if the lump sum constituted an abuse of discretion the Supreme Court could have decided that in a single paragraph and a remand would have been unnecessary.
A consideration of the specific awards requires a consideration of the legal basis of the awards found in C.C. arts. 2315.1 and 2315.2 for the survival action and the wrongful death action respectively. The survival action is for the recovery of the damages for the injury sustained by the decedent before she dies. This typically involves the pain and suffering endured by a person between the time of the accident and the time of death. On the other hand the wrongful death action is for the recovery of damages by the survivors because of their loss of the decedent. If a person dies instantaneously in an accident there will be no survival *51 action but there may be a wrongful death action.
With this in mind we turn first to the damages awarded plaintiffs in the survival action, the first element of which was the pain and suffering sustained by the decedent during the eight week period between the accident and her death for which the trial court awarded $150,000.00. The trial court "found it more probable than not" that the decedent experienced some conscious pain and suffering based upon the testimony of the treating neurologist along with Elton Mistich and the emergency technician, that she blinked, moaned and groaned. Defendants argue that the neurologist testified she was in a chronic vegetative state contradicting the court's findings and they say the testimony of the technician supports only a possibility, not the probability of decedent's conscious suffering. While the evidence may be sparse, we are not able to conclude from the record that the trial court's judgment in this regard was clearly wrong and we find no abuse of discretion in the award of $150,000.00 for this item.
The separate award of $600,000.00 for hedonic damages is erroneous as a matter of law. This term refers to damages for loss of enjoyment of life. They are included in the concept of general damages because, like pain and suffering, they cannot be quantified with any degree of "pecuniary exactitude" or measured definitely in terms of money. Foster v. Trafalgar House Oil & Gas, 603 So.2d 284, 285 (La.App. 2 Cir.1992). In that case the court also rejected the use of an expert witness to extrapolate the "value" of a human life and provide a basis for Hedonic damages. This is precisely what was done in the instant case with Dr. Wolfson. Like the Foster court, we reject the use of his testimony and conclude that there is no competent evidence in the record to support this award even if it were a legitimate award in the first place. Accordingly, this award for $600,000.00 will be deducted from the judgment.
Turning to the wrongful death action, defendants first argue that the three general awards which total $925,000.00 are excessive. On the basis of Youn v. Maritime Overseas Corp., 92-3017 (La.10/7/93) 623 So.2d 1257, 1261, we are not persuaded that this argument has merit. We are unable to conclude that these awards, under the circumstances of this particular case constitute an abuse of the vast discretion of the trial court.
Defendants next take issue with the awards for loss of services of $134,435.00 and $18,686.00 for loss of tutoring for Christopher. Damages for tutoring and loss of services are in themselves elements of general damages in a wrongful death action and cannot be awarded separately unless plaintiffs can prove that they are separate damages for which money had actually been paid. Thomas v. State Farm Ins. Co., 499 So.2d 562, 565 (La.App. 2d Cir.1986). In Williams v. City of New Orleans, 433 So.2d 1129,1137 (La.App. 4th Cir.1983), writ not considered, 437 So.2d 1135 (La.1983), this court held that the elements of damage for wrongful death are loss of love, affection and companionship, loss of support, and funeral expenses. The courts in Thibodeaux v. St. Landry Parish Police Jury, 561 So.2d 163, 168 (La.App. 3 Cir.1990), writ not considered 565 So.2d 433 and writ denied, 565 So.2d 447 and McQuarters v. Zegar, 466 So.2d 579 (La.App. 5th Cir.1985), took the same position citing Williams with approval. We have concluded that there is no legal basis for the separate loss of services awards and have resolved to deduct them from the judgment.
The last issue on the award raised by defendants is the loss of earning capacity award in the amount of $123,041.00. As stated above, while loss of support is a recognized element of damages for wrongful death we are not aware of any authority which recognizes loss of earning capacity as an element. In any event, the record does not support the award in this case even if it were recoverable. This award was based on Dr. Wolfson's projections that decedent would earn the minimum wage until she reached age sixty. However, the decedent never earned more than $1,700.00 in one year and her second best year for earnings was $685.00. There is no evidence that she ever did or ever would work full time for the minimum wage. In the seminal case on loss *52 of earning capacity, Folse v. Fakouri, 371 So.2d 1120 (La.1979), the court authorized the award on the basis of hard evidence which supported the probability that plaintiff had the ability to earn more money than he was actually earning at the time of his accident. Plaintiffs produced no such evidence as to the decedent. On the other hand, defendants' economist made a projection based upon the evidence in the record that the loss of decedent's support amounted to $14,346.00. We have concluded that this item is to be reduced to that figure.
Defendants complain about the award of legal interest on future damages. Aside from the fact that the awards affirmed herein are not for future damages, this argument flies in the face of R.S. 13:4203 which flatly authorizes legal interest on all judgments for tort damages.
The last issue raised by defendants concerns the intervention of Aetna Casualty and Insurance Company to collect out of the plaintiffs' judgment $72,109.98 of the medical expenses which were included. (The total medical expenses included in the judgment were $77,386.18) Aetna was the liability insurer of James Thibodeaux who was found by the Supreme Court to have contributed only fifty percent of the fault for the accident. Decedent had been treated at a state hospital and Chalmette General Hospital and incurred expenses totaling $72,109.98 at these institutions. They asserted lien rights on the amounts recovered by plaintiffs. In February 1991 Aetna paid the institutions its policy limits of $25,000.00 and received an assignment of their lien rights in exchange. Defendants contend that Aetna is entitled to only the $25,000.00 it paid because this was the sale of litigious right, governed by C.C. art. 2652.
According to that article the debtor, in this case defendants, may extinguish their obligation to the assignee of a litigious right by paying the price paid for the assignment. Aetna contends that this article requires the debtor to make a timely redemption of the litigious right and does not permit the debtor to contest the litigation without paying the assignee for the litigious right.
In their brief plaintiffs state that this issue does not concern them directly. The question is whether plaintiff should recover all of the $72,109.98 which was included in the judgment or only $25,000.00. Plaintiffs correctly observe that if Aetna's recovery is reduced the judgment should be likewise reduced.
We have resolved to apply the literal terms of C.C. art. 2652 and limit Aetna's recovery to $25,000.00. We find no basis for penalizing defendants for contesting liability by effectively casting them in judgment in favor of the liability insurer of the tort feasor who was fifty percent at fault, but who contributed only $25,000.00 toward plaintiffs' damages. Rather than to allow Aetna to profit at defendants' expense the equitable solution is to recognize Aetna's entitlement to $25,000.00 with legal interest from the date of the assignment out of the amount of plaintiffs' recovery.
Summing up, plaintiffs are entitled to recover these amounts from defendants with legal interest from date of judicial demand until paid.

Survival Action Damages $ 150,000.00
General Wrongful Death Damages For:
Elton Mistich $ 375,000.00
Christopher Mistich 275,000.00
Patricia Mistich 275,000.00
Loss of Support 14,346.00
Medical Expenses 25,000.00
Other Medical Expenses 5,276.20
 _____________
 $1,119,622.20

Out of these amounts Aetna is entitled to be paid $25,000.00 with legal interest from the date of its assignment.
Accordingly, the judgment appealed from is affirmed, but the amount of the award is reduced to the sum of $1,119,622.20 and Aetna's assignment rights are reduced to $25,000.00. In all other respects the judgment is affirmed.
AMENDED AND AFFIRMED.