808 So.2d 841 (2002)
Richard MATOS
v.
CLARENDON NATIONAL INSURANCE COMPANY, C-Fab, Inc. and Robert L. Ocon.
No. 2000 CA 2814.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*843 Felix A. Dejean, III, Michael K. Leger, Opelousas, for Plaintiff/Appellee Richard Matos.
Dan Edward West, Margaret Diamond, Baton Rouge, for Defendants/Appellants Clarendon National Insurance Co., C-Fab, Inc. and Robert L. Ocon.
Before: FITZSIMMONS, DOWNING and LANIER, JJ.[1]
*844 DOWNING, Judge.
Clarendon National Insurance Company, et al., (Clarendon), defendants/appellants, appeal a judgment awarding Richard Matos, plaintiff/appellee, six separate elements of general damages totaling $265,000 in addition to damages for loss of future wages and earning capacity in the amount of $70,000. Clarendon alleges that the general damage award is excessive, duplicative with overlapping elements, and that the award for future loss of wages and earning capacity is also excessive. Clarendon also assigns error to the jury verdict form that allowed awards for the cost of future surgery as well as for general damages that will compensate for the condition alleviated by the surgery. For the following reasons we affirm.

FACTS AND PROCEDURAL HISTORY
On February 20, 1998, Mr. Matos was rear-ended on U.S. Highway 90 in Morgan City, Louisiana by a "dually truck" pulling a flatbed trailer owned by defendants, Fab, Inc., driven by their employee, Robert L. Ocon, and insured by Clarendon. Matos filed suit on June 5, 1998 alleging various negligent acts in operating a motor vehicle. A Motion for Summary Judgment was granted on the issue of liability and a jury trial was held on February 24, 25 and 29, 2000 on the issue of damages.
The jury made the following awards in its verdict:

PHYSICAL PAIN AND SUFFERING
 Past $45,000
 Future $30,000
MENTAL PAIN AND SUFFERING
 Past $50,000
 Future $35,000
MEDICAL EXPENSES
 Past $28,420
 Future $40,000
LOSS WAGES OR EARNING CAPACITY
 Past Wages $47,465
 Future Loss Wage or Earning Capacity $70,000
LOSS OF ENJOYMENT OF LIFE $45,000
PERMANENT DISABILITY/IMPAIRMENT $60,000
 Judgment was signed March 15, 2000.

ASSIGNMENTS OF ERROR
Defendants appealed asserting the following assignments of error:
1. That the trial court erred in using a verdict form that asked the jury to award six separate elements of general damagespast physical pain and suffering, past mental pain and suffering, future mental pain and suffering, loss of enjoyment of life, and permanent disability or impairment which are overlapping and duplicative such that plaintiff recovered a total award of general damages that is an abuse of discretion.

*845 2. The award of general damages totaling $265,000 was excessive based on the nature and extent of plaintiffs injury as shown by the evidence.
3. The district court erred in rendering judgment implementing a jury verdict that awards the cost of future surgery as well as general damages which compensate plaintiff for the conditions that will be alleviated by the surgery.
4. The jury award of $70,000 for plaintiffs future wage loss and earning capacity is excessive because the evidence shows that plaintiff is enrolled in a career retraining program which will enable him to earn equal wages; if plaintiff undergoes disc fusion surgery for which he received $40,000, he will be able to perform many other jobs and earn wages equal to or in excess of the wages he was earning at the time of the accident; plaintiff only lost wages during the time two years he was in school which totals only $42,000.
Mr. Matos answered the appeal, alleging that the amount of judgment should be modified to increase the amount of damages from $450,885 to $555,885 with legal interest from the date of judicial demand.

GENERAL DAMAGE AWARD
The standard of review of general damage awards is difficult to express and is necessarily nonspecific. The discretion vested in the trier of fact is "great" and even vast, so that the appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
Clarendon first argues that the trial court permitted separate awards for general damages which included: (1) physical and mental pain and suffering, past and future totaling $160,000; (2) $45,000 for lost enjoyment of life; and (3) $60,000 for permanent disability or impairment. Clarendon contends that these awards have overlapping elements of general damages and are duplicative and thus should be set aside, as there is no evidence to support these awards. Clarendon further argues that the $265,000 total award was excessive in light of Mr. Matos' injuries and that nothing in the record supports a permanent disability award. Moreover, Clarendon contends that Mr. Matos cannot recover both the costs of surgery and general damages for the condition the surgery will eliminate.

AMOUNT OF THE GENERAL DAMAGE AWARD

ASSIGNMENT OF ERROR NO. 2
Clarendon's principal attack on this verdict is that it was excessive, and we will discuss that issue first.
Richard Matos was 26 years old at the time of the accident. He was married and expecting his first child. Although Mr. Matos had only an 11th grade education, he had a good work history. He was in excellent health and was steadily employed as a hydraulic equipment mechanic at Race Equipment Co. in Morgan City, Louisiana.
This matter involved a severe rear-end collision. The impact crushed the trunk of Matos' 1978 Oldsmobile, bent the axle, broke the driver's seat and ruptured the gas tank. The momentum of the impact threw his body forward from a lying position on the collapsed seat. The seat belt fortunately caught him, but the force of *846 the collision caused him to wrench his back and hit his knees on the dashboard.
Mr. Matos did not go immediately to the hospital, but was taken to the emergency room at 6 a.m. the following morning with severe neck, back and right leg pain. Mr. Matos was treated conservatively from March until November 1998. When his pain persisted, the treating physician sent him for a second opinion to Dr. Morgan Lorio, a board certified orthopedic surgeon. Dr. Lorio reviewed an earlier MRI and diagnosed a herniated disc at L5-S1 on the right with radiculopathy. On January 29, 1999 another MRI revealed a central disc protrusion with a small amount of extruded disc material at L5-S1 and disc bulges at L3-4, L4-5. Dr. Lorio's impression was that the material had blown out of the disc and was now in the spinal canal.
Mr. Matos had back surgery on March 9, 1999, consisting of microdissectomy and decompression of the L4-5 and L5-S1 levels.
This operation relieved some of the pain, but then his left leg began to hurt. On April 14, 1999 another MRI confirmed recurrent disc protrusion and significant epidural scarring. On November 4, 1999, another MRI revealed some arachonoiditis, which is scarring occurring within the sack that surrounds the nerve roots of the spinal cord. Dr. Lorio testified that given the degenerative nature of the L4-5 it was his opinion that Mr. Matos will need fusions at two levels. Dr. Lorio testified that in his opinion even with the surgery, this pain would persist for the rest of his life due to the scarring.
The record established that Mr. Matos has a 13% total disability because of his limited range of motion due to his compromised spine. Mr. Matos testified that if he sits too long he starts getting pain down both legs and that performing ordinary tasks such as carrying groceries, mowing grass, or holding his baby, now causes him pain. He also testified that before the accident he enjoyed the great outdoors and participated in activities such as deer hunting, but since the accident these endeavors are no longer available to him.
A damage award should not be disturbed by the reviewing court absent a showing of a clear abuse of discretion vested in the trial court. It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. Reichert v. State, Department of Transportation and Development, 96-1419, 96-1460, p. 10 (La.5/20/97), 694 So.2d 193, 201, citing Reck v. Stevens, 373 So.2d 498 (La. 1979).
We held in Hollenbeck v. Oceaneering International, Inc., 96-0377, p. 16 (La. App. 1 Cir. 11/8/96), 685 So.2d 163, 173, that $350,000 was not unreasonable considering plaintiffs young age, the pain he would continue to endure, and the vast change in lifestyle forced upon him by his injuries.
This instant case was presented thoroughly by highly competent attorneys. When we individualize this award for the consequences of the accident, we conclude that a $265,000 general damage award is not excessive and it was not an abuse of the jury's discretion to make such an award.
Mr. Matos was a vibrant, healthy and hard working young man when this accident occurred. He worked as a mechanic and earned a decent living by the sweat of his brow. Since the accident, however, even life's simple pleasures such as sitting in a deer stand or holding his newborn child, have become painful experiences for Mr. Matos. Even if some of the items of damage have overlapping elements, as defendants contend, the total award for general *847 damages is not an abuse of the jury's "much discretion." See Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281 (La. 1984).
Mr. Matos' Answer to Appeal has also sought an increase in damages. We conclude that the factfinders did not abuse their great discretion in awarding $265,000 in damages. This award is not, in either direction, beyond that which a reasonable trier of fact could assess under the facts of this case. This court will not disturb the damage award. This aspect of Clarendon's assignment of error and the issue raised in Mr. Matos' Answer to Appeal are therefore without merit.

OVERLAPPING ELEMENTS OF THE AWARD

ASSIGNMENT OF ERROR NO. 1
Our analysis doesn't stop here, however. Where dealing with specific awards made for specific reasons spelled out by the trial court, we must consider whether each specific item is recoverable as a matter of law. Mistich v. Volkswagen of Germany, Inc., 94-0226, p. 4 (La.App. 4 Cir. 6/25/97), 698 So.2d 47, 50. In this regard, Clarendon argues that the general damage award was excessive as a matter of law, because past and future mental and physical pain and suffering lost enjoyment of life, loss of earning capacity and permanent disability/impairment have overlapping elements which makes them duplicative and thus should be set aside.
We will now analyze the specific awards of general damages for proof of multiple recoveries.

LOSS OF ENJOYMENT OF LIFE
Clarendon argues that while an award for loss of enjoyment of life is not always duplicative of other damages, in this case the $45,000 award is in error as Mr. Matos demonstrated no injuries to his enjoyment of life beyond that for which he was compensated for by other separate and independent items awarded, namely his past and future physical and mental pain and suffering.
As Justice Victory stated in his assigned additional reasons in Joseph v. Broussard Rice Mill, Inc., 2000-628, p. 18 (La.10/30/00), 772 So.2d 94, 107 (Victory, J., assigns additional reasons), "the Louisiana Supreme Court has never squarely addressed the issue of awarding hedonic damages for loss of enjoyment of life as a separate element of damages." We note that there does appear to be a conflict between the Louisiana Circuit Courts of Appeal.
The First Circuit recognizes loss of enjoyment of life as a separate and independent item of damages from physical pain and suffering. Lemaire v. CIBA-GEIGY Corp., 99-1809, p. 20 (La.App. 1 Cir. 6/22/01), 793 So.2d 336, 352, writ denied, 2001-2153 (La.11/16/01), 802 So.2d 608. Also see In re Medical Review Panel on Behalf of Laurent, 94-1661 (La.App. 1 Cir. 6/23/95), 657 So.2d 713. The Second Circuit likewise has recognized loss of enjoyment of life as a separate element of damage. Varnell v. Louisiana Tech University, 30,260 (La.App. 2 Cir. 2/25/98), 709 So.2d 890. The Third Circuit has allowed loss of enjoyment of life to be listed as a separate element of damages on the verdict form. Harper v. Falrig Offshore, Inc., 2000-694 (La.App. 3 Cir. 12/20/00), 776 So.2d 620. Similarly, the Fifth Circuit has recognized loss of enjoyment of life as a separate element of compensable general damages which is not necessarily included in an award for general pain and suffering. Stevenson v. Louisiana Patient's Compensation Fund, 97-709 (La.App. 5 Cir. 4/9/98), 710 So.2d 1178. It seems that only the Fourth Circuit holds that it is erroneous, as a matter of law, to award separate damages for loss of enjoyment of life. Bachemin v. *848 Anderson, 97-2471 (La.App. 4 Cir. 7/29/98), 717 So.2d 677 and Brown v. Southern Baptist Hospital, 96-1990 (La. App. 4 Cir. 3/11/98), 715 So.2d 423.
We therefore reject Clarendon's argument. First, the trial court went to some length in his instruction explaining what "loss of enjoyment of life" meant, and how it differed from "pain and suffering" and "disability." Further, Mr. Matos was in the prime of life when this accident happened. He has been deprived of the simple enjoyments of a father with a young child. He was also a sportsman and enjoyed the great outdoors. These recreational activities are now foreclosed to him.
The same injuries may affect people differently. A quiet, reclusive person with a desk job may have pain and suffering from losing a leg. He would have a permanent disability but he would be able to continue work. He may have some loss of enjoyment of life but not to the extent that person who liked to hike, hunt or play tennis would. A person with a bad back and grown children, who does not do heavy lifting, may not lose as much enjoyment of life as someone with young children who cannot play "horse" or enjoy the squeals of a young child being tossed into the air. Life is much more than simple toil and sometimes the greatest pleasures come from the simplest things.
Here, the trial court's instructions clearly differentiate the awards for loss of enjoyment of life and for past and future physical and mental pain and suffering. Clarendon presents no proof the jury disregarded these instructions and awarded any double recovery. Accordingly, we find no merit in Clarendon's argument in this regard.

LOSS OF PERMANENT DISABILITY OR IMPAIRMENT
Clarendon next argues that an award for permanent disability or impairment is also duplicative of future pain and suffering and that the record does not support an award for any distinct injury constituting disability. Clarendon states that the trial court's instruction that "an injured victim can recover for any permanent disability or impairment which he has secondary to the injuries sustained in the accident" demonstrates the error in the award for permanent disability because plaintiff was compensated by other elements of damages for all effects secondary to his injury. For example, he was awarded damages for the physical pain itself, for the mental pain itself, and for the loss of enjoyment of life as well as for the effects of his work life (loss of earning capacity). Thus, Clarendon contends that there is no element of injury remaining that could possibly constitute a permanent disability justifying an additional $60,000 award.
We find this argument ironic since the Louisiana Association of Defense Counsel's own published Louisiana Jury Instructions, (Third Edition 1989), edited by Professors Frank Maraist and Tom Galligan, gives the following jury instruction:
In making an award for compensatory damages, you should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence, and no other:
Any bodily injury sustained by the Plaintiff and any resulting pain and suffering, disability, mental anguish and loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future. (Emphasis added.)
The record reflects that the trial court instructed the jury on the definition of disability and impairment. He clearly explained to the jury that they might award "any permanent physical impairment or *849 disability that you have not otherwise taken into account." This position has been articulated in Lougon v. Era Aviation, Inc., 609 So.2d 330, 346 (La.App. 3 Cir. 1992), which held that it was not improper for the trial judge in his opinion to list pain and suffering and disability as separate items though there is no requirement to do so.
As noted above, some people may incur a disability that is only temporarily painful, such as loss of a limb. Such loss may or may not have an effect on their earnings and may or may not have an effect on their loss of enjoyment of life. A jury could award pain and suffering for the loss of a leg, the mental anguish one suffers from losing a limb, lost earnings if the loss affected his job, loss of enjoyment of life if the loss affected his "pursuit of happiness" and disability simply for the fact that the leg is gone and he is now disabled.
Mr. Matos now has a 13% disability. The jury heard the testimony and compared his lifestyle prior to the accident with his lifestyle after the accident. As stated in Angeron v. Martin, 93-2381 (La. App. 1 Cir. 12/22/94), 649 So.2d 40, there is no mechanical rule for determining general damages and the facts and circumstances of each case must control. Again the trial court gave instructions differentiating damages for disability from other items of general damage.
Therefore, the first assignment of error is without merit.

COST OF FUTURE SURGERY

ASSIGNMENT OF ERROR NO. 3
Clarendon next argues that the amount awarded for general damages was excessive in view of the evidence that Mr. Matos plans to undergo disc fusion surgery to eliminate his complaints of pain and which will enable him to pursue activities which he now asserts are difficult or impossible. Clarendon claims that the $40,000 awarded for future medical expenses provides ample compensation for the costs of disc fusion surgery, which he intends to schedule during his summer break from schooling.
First, we note that future medical expenses are not general damages, but are special damages. Angeron, 93-2381, p. 2, 649 So.2d at 42. In Angeron we found that instead of awarding damages in anticipation of future surgery, the factfinder merely took into consideration the fact that the plaintiff's pain may become so intolerable as to require future surgery in determining the proper amount to award for the pain, suffering, inconvenience, loss of gratification, intellectual or physical enjoyment and other losses of lifestyle. Thus, there was not a duplicative recovery for the cost of the future surgery and his general damage award. Angeron, 93-2381, p. 3, 649 So.2d at 43.
In this case, Mr. Matos' experts described in great detail how the anatomical compromises would restrict his work life. Dr. Lorio testified that Mr. Matos was going to have pain and loss of motion for the rest of his life regardless of whether or not he had a successful fusion surgery.
We have thoroughly reviewed the record and do not find an abuse of discretion in the general damage award or the future medical award. This assignment of error is without merit.

LOSS OF EARNING CAPACITY

ASSIGNMENT OF ERROR NO. 4
Clarendon also takes issue also with the $70,000 future loss of income and loss of earning capacity award. According to Clarendon, the testimony at trial showed that his present employment prospects are as good or better than at the time of the accident, and that, after the *850 disc fusion for which he recovered future medical expenses, he may pursue a number of well-paying careers for which his is now qualified by training, aptitude, and experience. Clarendon points out that before the accident, Mr. Matos had only an 11th grade education and was a self-taught heavy equipment mechanic, earning $10/ hour. His job was tied to the oilfield economy, and he lacked training to move to other trades. Although he had previously driven a truck he had not driven one for several years. Since the accident, he had earned a GED and enrolled in a two-year technical college to be trained as a computer draftsman. Clarendon argues that his future wage and earning capacity must be considered in light of his improved condition and employability.
The factors to be considered in determining loss of future income include plaintiff's physical condition before and after his injury; his age and life expectancy, prior to and after the accident; his previous earnings; his work record; the amount plaintiff probably would have earned absent the injury; and the probability he would have continued to earn wages over the balance of his working life. See Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App. 2 Cir.1990).
In computing loss of future income, it is necessary to determine whether and for how long a plaintiff's disability will prevent him from engaging in work of the same or similar kind that he was doing at the time of his injury. Laing v. American Honda Motor Co., Inc., 628 So.2d 196, 205 (La.App. 2 Cir.1993).
John William Grimes, a Ph.D. in rehabilitation counseling and director of the graduate program at University of Louisiana, Lafayette, testified as an expert in Mr. Matos' behalf. Dr. Grimes testified that prior to the accident he was capable of long haul truck driving and could have earned $35,000 per year in that occupation. Since being retrained as a draftsman, he will be starting this new career at a salary of about $20,000 per year and over the next three or four years will earn about $30,000 per year. This will result in a $5,000 per year difference in earning capacity for the rest of his work life. Prior to the accident Mr. Matos was capable of heavy lifting as required of a heavy equipment mechanic and also of other occupations such as long haul truck driving. Since the accident, however, he no longer has this capacity.
Roy Douglas Womack, a Ph.D. in economics and finance and a professor in the Department of Economics and Finance at University of Louisiana, Lafayette, testified as an expert on Mr. Matos' behalf. Dr. Womack estimated his work-life expectancy at the time of trial as 30.44 years with an annual income base of $25,485, which reflected his earning ability the year prior to the accident. Dr. Womack testified that from the date of the accident until the date of trial, Mr. Matos' past lost wages would be $51,225 and his future lost earning capacity would be $136,248. The total past and future loss wage and earning capacity was estimated to be $187,473.
In order to recover damages for loss of earning capacity, the plaintiff need not be working or even in a certain profession to recover. What is being compensated is his lost ability to earn such an amount and he may recover such damages even though he may never have taken advantage of that capacity. Laing, 628 So.2d at 205.
Before the accident Mr. Matos was a strong young man with many avenues open to earn him a living. He was a seasoned mechanic and familiar with the oilfield industry and he was licensed to drive big trucks. Those options are now *851 foreclosed because of his compromised spine. Even though he is in the process of being retrained as a draftsman and hopefully will find a position in that field, he will be seeking employment in a new arena and beginning at the ground floor. There was also evidence that his back pain, even after the surgery, will make standing or sitting for long periods difficult. Thus, there is no guarantee that his career as a draftsman will be successful.
It appears the trial court adequately considered Clarendon's concerns regarding Mr. Matos' education, physical condition and employability. It is well established that an award for loss of future earning capacity is not merely predicated upon the difference between a plaintiffs earnings before and after a disabling injury. Rather, the award is predicated upon the difference between a plaintiffs earning capacity before and after a disabling injury. Hollenbeck, 96-0377, pp. 16-17, 685 So.2d at 173. We find no manifest error on the part of the trial court in this regard.
Therefore this assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the jury award is affirmed. Clarendon is cast for all costs.
AFFIRMED.
FITZSIMMONS, J., concurs and assigns reasons.
FITZSIMMONS, Judge, concurring, with reasons.
I respectfully concur in the opinion: Not because I see a clear error of law or fact in the reasoning, but to highlight the mounting inconsistency in awards of general damages and suggest that uniformity is needed to eradicate inconsistency.
"General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainly." Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law, § 7-2, at 148 (1996). General damages "include pain and suffering, mental anguish, loss of enjoyment of life ...." Id.
Due to their very nature, general damage awards are often wide-ranging and difficult to fathom. Experienced jurists and lawyers understand that a jury might have in mind an overall amount they want to award the plaintiffs to make them whole. Yet, that jury struggles with the puzzle of how to split up the general damages to conform to the verdict form categories. The analysis by appellate courts employed to uncover possible reasons for the jury award can be equally labyrinthine. Sophistry creeps in when judgment becomes overburdened with a perceived need to define a speculative award in precise terms. Too often these judicial explanations for jury awards are opaque, eroding the public's mandate for consistent and stable legal decisions.
Courts have tried to create some order through guidelines, but rigid guidelines cannot be successfully imposed for damages that rise from speculation and subjectivity. Instead of promoting order, guidelines have led to the narrowing of each of these categories in an ineffective attempt to define statically the elements of general damages. Yet, this quest to prevent inconsistent or unfairly overlapping awards has actually spawned what it abhorred.
If the old system is unworkable, a new system should be considered; one that recognizes the normal human tendencies and the speculative nature of general boundaries of each category. The ends of justice would be better served by a *852 reasonableness review of only the total general damages award.
The one general damage award concept may need to be the progeny of the legislature. It is really the duty of the parties' legal counsels to present, through argument, the impact the tort systemically had in the life of the victim. The jury then decides only the overall award. The jury verdict form would contain but one line for the award of general damages; damages awarded not to replace specific losses, but to compensate the victim for losses that are not easily defined or categorized. The overall award captures the total picture of the victim: A photograph not undermined by the difficult questions of why future mental suffering will be greater or lesser than in the past, or why loss of enjoyment of life is not represented in the mental or physical suffering. With these tenets in mind, I cannot say that the overall award of general damages for this particular victim under these particular facts was an abuse of discretion.
NOTES
[1] The Honorable Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.