MAX N. TOBIAS, JR., Judge.
|TIn this appeal, the appellant, 330 Magazine Street, L.L.C. (“330 Magazine”), seeks the costs associated with the purchase and redemption of a litigious right. Because we find 330 Magazine’s arguments contrary to the law, we affirm the judgment below.
On 20 August 2009, St. James Hotel, L.L.C. (“St. James”) executed a promissory note in the amount of $4,864,446.02 in favor of Regions Bank (“Regions”).[1] The note called for monthly payments and a balloon payment of the remaining balance on 30 June 2012. The note also provided for a variable interest rate of 4.25 percentage points above an index defined in the note. In the event of default with a *52 principal balance in excess of $250,000, the note fixed the interest rate at twenty-one percent. It is undisputed that St. James defaulted on the note.[2]
li>On 3 April 2012, Regions filed suit on the promissory note, noting the default interest rate of twenty-one percent. St. James answered the suit, denying liability.
330 Magazine, concerned that St. James would also fail to make the balloon payment due on 30 June 2012, successfully negotiated to purchase the Regions loan. In doing so, 330 Magazine incurred costs in excess of $200,000, partly because it had to borrow money from First NBC Bank to purchase the note. In addition, 330 Magazine paid over $140,000 to an investment banking company that helped 330 Magazine negotiate with Regions. 330 Magazine claims that it was able to receive a discount of about $200,000 off the purchase price of the loan through the actions of the investment banking company.
On 27 June 2012, 330 Magazine paid $4,325,000 to Regions to purchase the note, which had become a litigious right. See La.C.C. art. 2652.[3] On that same day, Mickey Palmer, a guarantor on the promissory note, gave notice of his intent to pay all amounts due on the note. In response, 330 Magazine stated that the full amount was $5,002,289.74; Mr. Palmer refused to pay that sum of money. On 11 |sJuly 2012, the amount of $4,333,513.17 was tendered on behalf of St. James to 330 Magazine, which tender was rejected.
Disagreeing with the amount 330 Magazine had calculated as the redemption price, St. James filed a cross-claim and concursus in the pending litigation and deposited $4,575,696.50 into the registry of the court on 12 July 2012. St. James alleged that only $250,128.96 of the amount was disputed. A motion by 330 Magazine to withdraw the undisputed amount from the registry of the court was opposed by St. James and denied by the trial court.
Both St. James and 330 Magazine filed motions for summary judgment. 330 Magazine argued that it was entitled to recover its entire acquisition costs (principal plus costs), that the interest rate recoverable was the default rate stated in the promissory note upon default (twenty-one percent), and that interest would continue to run until 330 Magazine was paid the redemption price. Contrariwise, St. James contended that it was responsible only for the principal paid by 330 Magazine to Regions, plus legal interest, until 12 July 2012, the date St. James tendered the amount it believe was owed. Finally, St. James requested an order compelling 330 Magazine to return all loan documents and cancel all mortgages of any kind held by 330 Magazine as part of the litigious right.
The cross motions for summary judgment were heard on 19 April 2013. The trial court granted the motion filed by St. James and denied the motion by 330 Magazine. The court declared that the purchase price for the litigious right was $4,325,000, with accrued legal interest *53 from the date of purchase by 380 |4Magazine, 27 June 2012, to the date of the tender on 12 July 2012, in the amount of $8,513.17. In addition, the court ordered the return of all loan documents and the cancellation of the mortgages(s) held by 330 Magazine. The matter was then dismissed with prejudice. This timely de-volutive appeal followed.
We first note that St. James filed a motion to dismiss the appeal and for damages for frivolous appeal. The motion was joined in and adopted by the guarantors referred to in note 2, supra. The parties argued that St. James’ obligation to 330 Magazine had been extinguished under La. C.C. art. 2652 as the debt had been paid. They further contend that 330 Magazine voluntarily participated in the extinguishment of St. James’ obligation, as well as the obligation of all the guarantors, when, in accordance with the judgment, it accepted the money from the registry of the court and returned all loan documents and cancelled mortgages to St. James. Thus, they argue that 330 Magazine has no legitimate grounds to appeal. 330 Magazine asserts that it preserved its right to appeal the trial court’s judgment by timely filing a devolutive appeal and that complying with a court judgment in order to avoid being found in contempt of court does not make its actions “voluntary.” We referred the motion to dismiss to the merits.
After reviewing the record, we deny the motion to dismiss. 330 Magazine is entitled to an appeal to seek the costs it incurred and to challenge the interest rate set by the trial court. Complying with a judgment does not make one’s actions voluntary. In the absence of a suspensive appeal, the execution of the judgment Iswas proper. Although we find that the trial court was correct in its rulings, such does not make this appeal frivolous. La.C.C. art. 2652 provides in pertinent part:
When a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment.
330 Magazine contends that the price it paid for the assignment includes all costs paid by it (the assignee) to third parties to acquire the right, admitting that no cases have interpreted article 2652 in this manner. It argues, however, that the language of the article does not limit the “price ... paid” in any way, but that the only reasonable interpretation must consider the full amount paid by the party acquiring the litigious right. As the purpose of the article is to prohibit the party that purchased the litigious right from making a profit, the litigious holder must be paid all costs of the purchase of the right, including monies paid to third parties, and no more.
330 Magazine relies in large part on Smith v. Cook, 189 La. 632, 644, 180 So. 469, 473 (1938). In Smith, the Louisiana Supreme Court stated:
Thus it may be seen from the history of the articles of the Civil Code (Nos. 2652, 2653, and 2654) on ‘Litigious Rights,’ that the object thereof was primarily ‘to prevent the purchasing of claims from avarice or to injure the debtor. ⅞ * ⅛ ’ And in order to carry into effect the purpose of the law, the one against whom the claim is purchased is permitted to invoke the provisions of the Civil Code, art. 2652, against such a purchaser and release himself therefrom by paying the purchaser the price of the transfer, together with interest from the date thereof. In other words, the lawmakers have deemed it advisable from a stand *54 point of equity and public policy, in the sale of a matter in litigation, to favor the party against whom the matter in | (¡litigation is transferred over one who speculates in law suits. He is given the absolute right to take over the third party’s deal or bargain upon reimbursing the transferee the price paid therefor with interest, and the matter is considered as though he had compromised with his opponent for such amount. [Emphasis supplied.]
However, we do not find that this case supports 380 Magazine’s position. This passage clearly indicates that St. James, in purchasing the litigious right, is liable only for the price of the transfer; in other words, what 330 Magazine paid to Regions Bank, not what it paid to third parties in order to accomplish the transfer.
The more recent Supreme Court case of Lulc-Shop, L.L.C. v. Riverwood LaPlace Associates, L.L.C., 01-2446 (La.1/4/02), 802 So.2d 1291, further supports the judgment in favor of St. James. In that case, CFSC Capital Corp. (“CFSC”) filed suit in federal court against Riverwood LaPlace Associates, L.L.C. (“Riverwood”) seeking a judgment against Riverwood for sums allegedly due on promissory notes, mortgage notes, and guaranty agreements. River-wood filed a petition in bankruptcy, which resulted in the imposition of an automatic stay of the suit. Thereafter, CFSC assigned its claims against Riverwood to Luk-Shop, L.L.C. (“Luk-Shop”).
Riverwood emerged from bankruptcy and approximately one year later, Luk-Shop filed suit against Riverwood in state court. Luk-Shop’s petition sought judgment on the promissory notes, mortgage notes and guarantee agreements that were assigned by CFSC as well as a writ of sequestration regarding revenues from Riverwood’s shopping center. Riverwood responded, claiming entitlement to litigious redemption, seeking to terminate this litigation by paying to Luk-Shop what Luk-Shop had paid to its assignor, CFSC.
|7The trial court found that CFSC’s assignment to Luk-Shop was not the sale of a litigious right because Riverwood had dismissed its motion to dissolve the writ of sequestration in the prior federal court litigation. The court of appeal denied supervisory review. Riverwood sought supervisory review by the Supreme Court, which stated as follows:
Upon consideration, we find error in the trial court’s holding as the facts indicate that the assignment from CFSC to Luk-Shop was the sale of a litigious right pursuant to Louisiana Civil Code article 2652.
[[Image here]]
The underlying obligation, the debt, was a litigious right because it was “contested in a suit already filed.” La. Civ.Code art. 2652. Thus Riverwood is entitled under La. Civ.Code art. 2652 to extinguish the obligation by paying to Luk-Shop what Luk-Shop paid to CFSC.
Id. at pp. 2-3, 802 So.2d at 1293. [Emphasis supplied; footnote omitted.]
In the instant case, St. James is entitled to extinguish the obligation by paying to 330 Magazine what 330 Magazine paid to Regions. We find no support in the law that would permit 330 Magazine to recoup what it paid to third parties in connection with the purchase of that litigious right. Thus, this assignment of error is without merit.
Next we address the proper rate of interest St. James owes to 330 Magazine. The trial court awarded legal interest at four percent, the amount set by the Louisiana Commissioner of financial institutions. See La. R.S. 9:3500 B(l). 330 Magazine *55 insists that it is entitled to recover the default interest rate of twenty-one percent as set forth in the promissory note. Nothing in the record indicates that 330 Magazine paid any default interest to Regions; the closing statement between 330 Magazine and Regions does not include a charge for interest. However, 330 Magazine seeks to collect interest it never paid.
|sThe right to collect interest is set forth in the codal article. Thus, the interest permitted by article 2652 is legal (judicial) interest, not conventional interest.
We find support for the application of legal interest in the case of Mistich v. Volkswagen of Germany, Inc., 94-0226 (La.App. 4 Cir. 6/25/97), 698 So.2d 47, which involved a fatal automobile accident. Aetna Casualty and Insurance Company paid over $75,000 in medical expenses for one of the drivers who was found to be fifty percent at fault for the accident. Aet-na intervened in the lawsuit to recover its expenses. However, earlier, Aetna had paid the medical providers its policy limits of $25,000 and received an assignment of their lien rights in exchange. The defendants contended that Aetna was entitled to only the $25,000 it paid because that was the sale of the litigious right, governed by La. C.C. art. 2652.
Therein we stated:
We have resolved to apply the literal terms of C.C. art. 2652 and limit Aetna’s recovery to $25,000.00. We find no basis for penalizing defendants for contesting liability by effectively casting them in judgment in favor of the liability insurer of the tort feasor who was fifty percent at fault, but who contributed only $25,000.00 toward plaintiffs’ damages. Rather than to allow Aetna to profit at defendants’ expense the equitable solution is to recognize Aetna’s entitlement to $25,000.00 with legal interest from the date of the assignment out of the amount of plaintiffs’ recovery.
698 So.2d at 52. [Emphasis supplied.]
Thus, we find that the trial court correctly awarded legal interest from the date of the assignment. This assignment of error is likewise without merit.
Finally, 330 Magazine contends that interest should run from the date of the assignment from Regions, 27 June 2012, until it received the monies from the court registry in April 2013. The trial court permitted interest until 12 July 2012, the |fldate St. James filed its concursus proceeding and deposited the money into the registry of the court. We find no error.
A concursus proceeding is defined in La. C.C.P. art 4651 as one in which two or more persons having competing or conflicting claims to money, property, or mortgages or privileges on property are impleaded and required to assert their respective claims contradictorily against all other parties to the proceeding. The purpose of a concursus action is to avoid multiplicity of suits, by providing for a single judgment which will finally adjudicate all the issues between all the parties. Hibernia Nat’lBank v. Blossman, 583 So.2d 5, 8 (La.App. 4th Cir.1991).
La. C.C.P. art. 4658 provides in pertinent part: “After the deposit of money into the registry of the court, the plaintiff is relieved of all liability to all of the defendants for the money so deposited.” We read this to include the running of interest. Therefore, interest ceased running on the date of the deposit, 12 July 2012.
For the reasons set forth above, we affirm the judgment of the trial court and deny the motion to dismiss.

*56
AFFIRMED; MOTION TO DISMISS DENIED.

. This note renewed, extended and/or refinanced its original loan from Regions.

. Guarantors to the original note are Edwin M. Palmer, III; Milton J. Womack, Jr. and Stephen Carville, as Independent Testamentary Co-Executors of the Estate of Milton J. Womack; and East Indies, LLC.

. La.C.C. art. 2652 provides:
When a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assign-ee paid for the assignment, with interest from the time of the assignment.
A right is litigious, for that purpose, when it is contested in a suit already filed.
Nevertheless, the debtor may not thus extinguish his obligation when the assignment has been made to a co-owner of the assigned right, or to a possessor of the thing subject to the litigious right.