561 So.2d 163 (1990)
Huey E. THIBODEAUX, et al., Plaintiffs-Appellees,
v.
ST. LANDRY PARISH POLICE JURY, et al., Defendants-Appellants.
No. 88-1237.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
Rehearing Denied April 23, 1990.
Writ Denied June 29, 1990.
*164 Olivier & Brinkhaus, Armand J. Brinkhaus, Sunset, La., for plaintiffs-appellees.
Dauzat, Falgoust, Jerry Falgoust, Dubuisson & Dubuisson, Edward Dubuisson, Opelousas, for defendants-appellants.
Before FORET, STOKER and KING, JJ.
FORET, Judge.
This is a survival action and wrongful death action filed by Huey E. Thibodeaux and his wife, Terradene Richard Thibodeaux (Thibodeauxs)[1], against the St. Landry Parish Police Jury (Police Jury) and Wayne A. Reiners (Reiners), arising out of the death of the Thibodeauxs' son, Dwaine. Reiners thereafter reconvened against the Thibodeauxs and filed a third party demand against the Police Jury. The trial court rendered judgment in favor of the Thibodeauxs, finding both the Police Jury and Reiners negligent, and dismissed the reconventional demand and third party demand filed by Reiners. The Police Jury and Wayne Reiners have appealed this judgment, and the Thibodeauxs have answered the appeal.

FACTS
On September 7, 1976, a clear, dry day, Wayne Reiners was driving his pickup truck in a southerly direction on Parish Highway 6-20 located in St. Landry Parish, on his way to pick up a backhoe at his uncle's farm near Lewisburg. On this same date and time, Dwaine Thibodeaux (decedent), a 15-year-old student at Lawtell High School, was traveling east on Parish Road 6-20-1, on his way to Opelousas to begin his first day of work under his school's Cooperative Agricultural Education Program. As decedent approached the intersection of 6-20 and 6-20-1, he turned left (north) onto 6-20 and was struck broadside by the Reiners vehicle, the point of impact being in the north-bound lane of Parish Road 6-20, approximately 15 feet north of the intersection. According to State Trooper John Medlin, who investigated the accident, the speed of the decedent's vehicle was estimated to be approximately 10 miles per hour while Wayne Reiners advised Trooper Medlin that he was traveling somewhere between 50 and 60 miles per hour (approximately 58 mph) before applying his brakes.
The decedent was killed almost instantly in the collision, while Wayne Reiners and his occupant, Allen Courville, suffered only minor injuries. The Police Jury and Wayne Reiners have appealed the trial court's judgment, contending that the trial court erred in finding that the decedent was not contributorily negligent. Reiners also argues on appeal that the trial court erred in finding that he was guilty of negligence. By answer to appeal, the Thibodeauxs asked that the trial court's damage awards be increased and further complained that the trial court erred in allowing certain testimony and exhibits into evidence. For the reasons hereinafter recited, we affirm the judgment of the trial court.

*165 WAS THE DECEDENT GUILTY OF CONTRIBUTORY NEGLIGENCE?[2]
The record reflects that the intersection in question is a "T" intersection, with Parish Road 6-20-1 being the leg of the T and Parish Road 6-20 being the top of the T. It was also established at trial that there were no stop signs or other traffic control devices at the intersection in question. In addition, Trooper Medlin testified that there were tall weeds and grass (6 to 7 feet above the roadway) located in the northwest quadrant of the intersection which severely obstructed the vision of a motorist traveling east on Parish Road 6-20-1, as well as a motorist proceeding south on Parish Road 6-20. According to Trooper Medlin, a motorist traveling on Parish Road 6-20-1 would almost have to enter the intersection in order to ascertain whether or not there is oncoming traffic proceeding south on Parish Road 6-20. His testimony in this regard is strongly supported by the testimony of Lawrence C. Harry, District Traffic Operations Engineer with the Department of Transportation & Development, who was qualified as an expert in the fields of traffic engineering and accident reconstruction. Harry stated that the Manual on Uniform Traffic Control Devices would require that the intersection in question be marked with a stop sign facing Parish Road 6-20-1. Additionally, he stated that the manual also provided that the intersection should also have been equipped with a "Stop Ahead" sign approximately 700 feet in advance of the intersection, as well as an arrow board and hazard markers on the far side of the intersection. The need for such warning devices, according to Harry, is even greater when one considers the obstructions in the northwest quadrant of the intersection which, according to Harry, prevent an east-bound motorist on Parish Road 6-20-1 from seeing a south-bound motorist on Parish Road 6-20 and vice versa. Harry's testimony in this regard is as follows:
"Q. You had indicated, I think, other markings that could be at a junction. Are there things, for example, either a center line or across-the-road things, to indicate that you're supposed to stop or take other action besides go straight ahead?
A. One of the reasons why I would recommend in particular a stop sign facing La. 6-20-1, without any markings there, there's no indication as to whether you should stop and if you are, more importantly, where to stop. Right-of-way there from the telephone pole to the edge of the pavement is only about 18 feet wide and the road itself is a fairly narrow roadI think it's about 17 or so feet. A normal motorist approaching the intersection or any motorist approaching this intersection
Q. Of which road?
A. On 6-20-1even in anticipation of wanting to stop, because of a lack of definition as to where the stop sign or stop line is, tends to be lured into the intersection. It was noted in, I think, Mr. Fontenot's deposition that he stated that he observed this phenomenon, that people stopped in the middle of the intersection.
MR. DUBUISSON: Your Honor, let me object to this line of testimony. We're having a witness testifying as to what somebody might've said in a deposition.
THE COURT: Sustained.
MR. BRINKHAUS: Wait a minute, Your Honor; the deposition is in the record as though the man had testified live this morning, this is an expert witness who sat here in court and has read it. It's not as though it's a complete stranger. And he's describing
THE COURT: To the extent that the deposition is in the record and there is sufficient basis for his opinion, I'll let it go. Other than that, the opinion is no good.

*166 MR. BRINKHAUS: That's correct, Your Honor; but based upon the testimony
THE COURT: I'm letting it go in, Mr. Brinkhaus.
MR. BRINKHAUS: Well, there's another thing besides his, though, Sgt. Medlin's, but proceed on that.
A. In any event, based on my own experience and the survey of intersections comparable to this, I've observed the same thing myself, but it was curious to note that Mr. Fontenot had made this same observation. Because of the narrow right-of-way and the severely restricted sight distances, even a motorist attempting to stop, once you break out of the right-of-way, you're only 18 feet from the edge of the road. So even though you're attempting to stop, with your foot on the brake, you can wind up in the middle of the road before you even know it's there. So I feel it is important to mark the intersection to identify where to stop if nothing else. In other words, you should have a stop sign there, yes, based on the traffic volumes and the sight distances, but in addition to that, you need to know where to stop. You're in the intersection before you note it. My observations of the intersection, I saw physical evidence on the ground where skid marks terminated in the middle of the intersection."
Harry further testified that the intersection in question, with the attendant obstructions and lack of traffic control devices, creates confusion in the mind of a motorist proceeding east on Parish Road 6-20-1. For example, he stated that a motorist proceeding east on Parish Road 6-20-1 could very well anticipate that he had the "right of way around the corner," entitling him to make a left turn onto Parish Road 6-20 without having to yield, as there were no traffic control devices present to indicate otherwise. As for the safety of this intersection in the absence of any traffic control devices, Harry stated that he would describe such an intersection as "hazardous, at best."
The testimony of Trooper Medlin and Mr. Harry with regard to the dangers presented by the intersection in question was supported by the testimony of Wilfred Fontenot, whose house is located along Parish Road 6-20, across the intersection. Fontenot, who has lived at this location for several years, testified that, prior to the accident, he observed vehicles approaching from Parish Road 6-20-1 stopping in the middle of the intersection, indicating that they were surprised by the existence of the intersection or unsure of what to do. He also testified that, on some occasions, vehicles on Parish Road 6-20-1 have traveled directly across the intersection and into the ditch located near his home, prompting him to speak to one of the members of the St. Landry Parish Police Jury about the dangers presented by the intersection. According to Fontenot, he spoke to the late Murphy Richard approximately ten days prior to the accident, requesting a stop sign at the intersection. He further testified that a stop sign facing Parish Road 6-20-1 was not installed until one or two days after the accident in question.
In Hodges v. State, Through Dept. of Highways, 370 So.2d 1274 (La.App. 3 Cir. 1979), writs denied, 374 So.2d 660, 661 (La. 1979), the Calcasieu Parish Police Jury was found to be negligent for having failed to place a stop sign on the right side (there was a stop sign on the left side) of a parish road at the intersection of the parish road and a state highway. In rejecting the defendant's argument of contributory negligence by the plaintiff, the court stated the following:
"As to not recognizing the intersection, the pictures in the record reflect that, due to the physical situation at the corner, the intersection is not readily recognizable and it is not apparent that La. 27 is a favored road. Dr. Baerwald confirmed that a driver on Dugas Road could not be sure he was approaching a paved roadway, much less an important intersection. (TR. 930).
As to the suggestion that Hodges should have seen vehicles in the intersection prior to the accident, there was general testimony about traffic on La. 27, *167 but the record does not indicate that there was traffic which should have been readily observed by a motorist in Hodges' position.
There was also testimony by one witness that Hodges was leaning over his steering wheel and by another that Hodges was slumped over the wheel. One of these witnesses said that Hodges may even have been asleep, although he could not be certain. The burden of convincing the triers of fact on the issue of contributory negligence rested with the defendants and they failed to convince either the trial court or the jury in this instance. We cannot say that there was manifest error or that the trial court and jury were clearly wrong in concluding that Hodges was not contributorily negligent."
Turning now to the facts of the instant case, in view of the evidence discussed above, we affirm the trial court's determination that the decedent was not guilty of contributory negligence. The intersection in question was obstructed and confusing to an east-bound motorist approaching on Parish Road 6-20-1. The decedent no doubt could have been lured into the intersection, as stated by Harry, without knowing of its existence until it was too late to take evasive action. His plight, in this regard, was further complicated by the fact that Wayne Reiners was traveling left of center on Parish Road 6-20 at a speed of approximately 58 miles per hour which, considering the width and conditions of the roadway, was clear negligence.
The Police Jury and Wayne Reiners argue on appeal that the decedent was held to a higher standard of care because he was approaching a blind, uncontrolled intersection and, in support thereof, cite several cases, including Toomer v. Kararick, 346 So.2d 858 (La.App. 4 Cir.1977), and Burrow v. Commercial Union Assurance Companies, 419 So.2d 479 (La.App. 3 Cir. 1982), writ denied, 423 So.2d 1162 (La. 1982). These cases, however, cannot be applied to the facts of the instant case because there is no evidence that the decedent was even aware of the existence of the intersection in question.[3] Surely, we cannot find the decedent guilty of contributory negligence for failing to exercise due care in approaching an obstructed intersection when there is no evidence that he was even aware of the existence of such intersection. Had it been proven that he knew of the existence of the intersection and, in spite of the obstructions, proceeded into the intersection, a strong case for contributory negligence could be made. However, this simply has not been proven in this case, and the burden of proof was on the Police Jury and Wayne Reiners to prove those facts necessary to establish the defense of contributory negligence. McCoy v. Franklin Parish Police Jury, 414 So.2d 1369 (La.App. 2 Cir.1982). We find that the Police Jury and Reiners have failed in their burden of proof in this regard, and we therefore affirm the trial court's finding that the decedent was not guilty of contributory negligence.

NEGLIGENCE OF WAYNE REINERS
Reiners contends that the trial court erred in finding that he was negligent. We disagree as there is substantial evidence of record establishing his negligence. Reiners traveled a narrow country road, driving left of center, at a speed of approximately 58 miles per hour. A motorist has a duty to operate his vehicle at a speed which is reasonable and prudent, consistent with the width and surface of the roadway and other attendant conditions. Sibley v. Menard, 398 So.2d 590 (La.App. 1 Cir.1981), writ denied, 400 So.2d 211 (La.1981). Considering the circumstances relative to this case, we find that the trial court did not commit manifest error in finding that Reiners was negligent in operating his vehicle in the manner aforesaid.

WRONGFUL DEATH AWARDS
The Thibodeauxs argue that the trial court's wrongful death awards of $115,000 to Mr. Thibodeaux and $125,000 to Mrs.
*168 Thibodeaux are inadequate. The elements of damage for wrongful death are loss of love, affection, and companionship, loss of support, and funeral expenses. Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4 Cir.1983), writ refused, 437 So.2d 1135 (La.1983). In the instant case, the Thibodeauxs failed to establish damages for loss of support. Furthermore, the trial court did make a separate award for funeral expenses incurred. We are therefore called upon to decide whether or not the trial court's awards for loss of love, affection, and companionship constitute an abuse of discretion. After carefully reviewing the record, and considering the close relationship between the decedent and his parents, we find that the trial court did not abuse its much discretion in awarding to Mr. Thibodeaux $115,000 for loss of love, affection, and companionship. We further find no abuse of discretion in the trial court's award of $125,000 to Mrs. Thibodeaux. See Siemann v. Teston, 517 So.2d 242 (La.App. 1 Cir.1987).

TRIAL COURT'S AWARD FOR PRE-IMPACT FRIGHT AND SUFFERING
The trial court made an award of $5,000 for the decedent's "pre-impact fright and suffering." Defendants do not contest the awarding of these damages, nor the amount thereof. The Thibodeauxs maintain that this award should be increased to $25,000. The trial court's award includes damages for conscious pain and suffering prior to death. It is well established that where there is no indication that the decedent consciously suffered any pre-death pain, an award cannot be made to the survivors for the decedent's pain and suffering. Siemann v. Teston, supra. In the instant case, the Thibodeauxs failed to prove that the decedent was conscious for any period of time following the accident or that he even survived the collision. Thus, it is clear that the Thibodeauxs are entitled to little, if anything, for the decedent's conscious pain and suffering prior to death. As for an award for pre-impact fright and/or anguish, there is no evidence of record indicating that the decedent ever saw the oncoming Reiners vehicle prior to the collision. Plaintiff's vehicle left no skid marks and there is no indication that any sort of evasive action was taken. Thus, even assuming that pre-impact fright and anguish is a recoverable item of damages, we find that an award of $5,000 clearly does not constitute an abuse of the trial court's much discretion.

ADMISSION OF PHOTOGRAPHS
The Thibodeauxs also complained that the trial court erred in admitting into evidence photographs of the accident site taken by William Bourdier, Jr., a professional photographer. Alternatively, plaintiffs argue that these photographs should have only been accepted as to what they depicted on the date they were taken. In view of our decision to affirm the trial court's finding with regard to fault, this issue is moot and shall therefore not be discussed.

ADMISSION OF TESTIMONY OF WILFRED FONTENOT
Plaintiffs complained that the trial court erred in allowing into evidence certain portions of the testimony of Wilfred Fontenot, who resided in the area where the accident occurred. Again, because we have affirmed the trial court's finding with regard to the issue of fault, it is unnecessary to consider this issue.
In view of the above and foregoing, the judgment of the trial court is affirmed and all costs of this appeal are assessed to defendants-appellants, St. Landry Parish Police Jury and Wayne A. Reiners.
AFFIRMED.
STOKER, J., concurs in part and dissents in part and assigns written reasons.
STOKER, Judge, concurring in part and dissenting in part.
I concur in the affirmance of that part of the trial court judgment which finds liability as to the St. Landry Parish Police Jury. With some reservation, I concur in the holding that Dwaine Thibodeaux was not *169 contributorily negligent. I concur in that part of the majority opinion relating to the damage awards.
I have some reservations regarding the trial court's action in making an award for pre-impact fright and suffering. My reservations relate both to the question of whether pre-impact fright and suffering may be compensable and to the quantum if there is a recognized legal right to such damages. The evidence fairly established that young Thibodeaux was killed almost instantly and probably never knew what hit him. Consequently, the plaintiffs' proof of such damages is lacking. Nevertheless, I concur in the award for pre-impact fright and suffering because it was never raised on appeal by either of the defendants. It was never an issue in this appeal.
The majority opinion passes over the issue of Wayne A. Reiners' alleged negligence as if there were no question regarding his negligence. I would not hold him liable as I do not believe he was guilty of any negligence which was a cause-in-fact of the accident. Both roads are narrow country roads, 17 to 18 feet wide. Reiners said he was traveling between 55 and 60 miles per hour and the finding, as I understand it, was that Reiners was traveling at 58 miles per hour. He was also two feet over the center line. This was a daytime accident and the weather was clear and dry. On a road as narrow as Parish Road 6-20, it is not unusual for a motorist to edge over the center line by two feet as long as he is not meeting traffic and no vehicles are following him. If Reiners had been completely within his lane, his vehicle would still have broadsided the Thibodeaux vehicle. There could be no causal connection between Reiners being two feet over the center line and the collision. Thibodeaux would have been hit either way.
With reference to the speed of 58 miles per hour, three miles over the limit, I still see no causal connection. One might argue that if Reiners had been traveling at a lesser speed there would have been no collision. Such an argument would be mere speculation. More important, however, is the fact that any duty a motorist on Parish Road 6-20 might have to drive at a much lesser speed limit than 55 miles per hour would not encompass the risk of a vehicle suddenly running out of Parish Road 6-20-1 directly in the path of the vehicle on Parish Road 6-20. See Bland v. Interstate Fire and Casualty Co., 311 So.2d 480 (La. App. 4th Cir.1975); Williams v. State Farm Mutual Automobile Ins. Co., 148 So.2d 126 (La.App. 2d Cir.1962); Ledet v. Fireman's Fund Insurance Company, 199 So.2d 7 (La.App. 4th Cir.), application denied, 202 So.2d 648 (La.1967) and Aguillard v. Frank, 542 So.2d 834 (La.App. 3d Cir.1989).
The majority cite in their opinion the case of Sibley v. Menard, 398 So.2d 590 (La. App. 1st Cir.1980), writ denied, 400 So.2d 211 (La.1981) for the proposition that a motorist has a duty to operate his vehicle at a speed which is reasonable and prudent, consistent with the width and surface of the roadway and other conditions, such as the weather. As a general proposition, this is no doubt true. However, the facts of the Sibley case are distinguishable from the facts in this case. The primary condition in Sibley was a dangerous curve. The accident involved two gravel trucks going and coming from a gravel pit on a road where numerous other gravel trucks were traveling. As quoted by the Court of Appeal, the trial judge found that Menard (the defendant driver) "was traveling at a rate of speed which prevented the safe negotiation of the curve in question" and his negligent operation was "a cause in fact of the accident sued on herein." The Court of Appeal agreed.
The collision between the Reiners vehicle and the Thibodeaux vehicle in this case occurred on a clear dry day. The road surface had nothing to do with the accident. It has not been shown that there were any dangerous curves or hills on Parish Road 6-20. Even if the road was full of curves (or hills) so as to dictate a slower speed than 55 miles per hour, such negligence would not be the cause-in-fact of an accident at a T-junction under such facts as are presented in this case.
*170 For the foregoing reasons, I respectfully dissent from the majority opinion holding Wayne A. Reiners liable based on his alleged negligence.
NOTES
[1] After trial on the merits, but before a decision was rendered by the trial court, Huey Thibodeaux died and his wife and children have been substituted as plaintiffs herein.
[2] The accident in question took place prior to the adoption of comparative negligence in our State.
[3] At trial, the defendants were unable to establish that the decedent had ever driven on or traveled the road in question before the date of the accident.