899 So.2d 590 (2005)
Noel WILSON, Jr.
v.
TRANSPORTATION CONSULTANTS, INC. and Liberty Mutual Insurance Company.
Terecita Cornelius Lavalois and Lawrencia Encalade
v.
Noel Wilson, Jr., Illinois National Insurance Company, Transportation Consultants, Inc., and Liberty Mutual Insurance Company.
Nos. 2004-CA-0334, 2004-CA-0335.
Court of Appeal of Louisiana, Fourth Circuit.
March 2, 2005.
*594 J. Douglas Sunseri, Dawn Danna Marullo, Nicaud, Sunseri & Fradella, L.L.C., Metairie, LA, for Plaintiff/Appellant.
Paul Michael Elvir, Jr., Olinde & Dubuclet, Metairie, LA, for Defendant/Appellee.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS Jr.).
*591 TERRI F. LOVE, Judge.
This appeal arises from an action filed to recover damages sustained as a result of an automobile accident. The trial court awarded Noel Wilson, Jr. $124,800 in damages. It is from this judgment that Noel Wilson, Jr. appeals. For the reasons assigned below, we affirm.

FACTS AND PROCEDURAL HISTORY
Noel Wilson, Jr. ("Mr. Wilson") was driving southbound on Third Street approaching the intersection of Third Street and Baronne when an automobile operated by Terecita Lavalois ("Ms. Lavalois") in which Lawrencia Encladade ("Ms. Encladade") was a passenger, broadsided his truck on the left side.
*595 A truck, leased by Transportation Consultant, Inc. ("TCI") and used by Alfreddie Davis ("Mr. Davis"), a TCI employee, was parked at the corner of the Third Street and Baronne Street intersection allegedly obscuring the view of the stop sign. As a result, Officer Byron Mitchell of the New Orleans Police Department issued a citation to Mr. Davis for improperly parking the truck. Mr. Wilson asserts Mr. Davis' improper parking was the sole cause of the accident. Conversely, TCI, Mr. Davis and Liberty Mutual Insurance Company contend that the improper parking obscured the view of the stop sign, but that it did not completely obstruct Mr. Wilson's view.
Upon being transported to Charity Hospital following the accident, Mr. Wilson complained of neck, back, pelvis, shoulder, and jaw pain. Additionally, he sustained six broken teeth and suffered numerous lacerations. To treat his continuous neck and back pain following the accident, Mr. Wilson received a cervical epidural injection, intradiscal electra thermal therapy, and an anterior cervical fusion.
Mr. Wilson filed suit against TCI, its insurer, Liberty Mutual Insurance Company ("Liberty Mutual"), and later added Ryder Truck Rental ("Ryder") as lessor of the truck to TCI.[1] Additionally, Ms. Lavalois and Ms. Encladade filed suit against Mr. Wilson, his insurer Illinois National Insurance Company, TCI, and Liberty Mutual. However, Ms. Lavalois and Ms. Encladade settled their claims against Mr. Wilson, Illinois National Insurance Company, TCI and Liberty Mutual prior to trial.
Immediately preceding the trial, the trial court granted a Motion in Limine, filed by TCI, which sought to exclude a correspondence from a claims adjuster at Liberty Mutual. The correspondence attributed 10% of the fault for the accident to Mr. Wilson and 90% to TCI. The correspondence also documented a payment to Mr. Wilson for his property damage and TCI's portion of his automobile rental expense.
After a three-day trial on the merits, the jury found Mr. Davis forty percent (40%) negligent and in the course and scope of his employment, thus, holding TCI and Liberty Mutual liable for damages. The jury also allocated forty percent (40%) fault to Mr. Wilson and twenty percent (20%) to an unnamed third party. The jury calculated the damages as follows:

 Medical bills $104,116
 Lost earnings 45,000
 General damages allocation:
 Past physical pain and suffering 40,721
 Future physical pain and suffering 40,721
 Past medical pain and suffering 40,721
 Future medical pain and suffering 40,721
_________________________________________________
 Total $312,000

The trial court issued the judgment reflecting the jury's verdict on October 24, 2003. On November 3, 2003, defendants filed a Motion to Amend Judgment asserting that the wording of the original judgment was ambiguous. On November 5, 2003, in its Judgment and Reasons for Judgment denying defendants' Motion to Amend Judgment, the trial court found that the judgment, as written, was not ambiguous and lead to clear interpretation. The November 5, 2003 Judgment reiterated the judgment rendered on October 24, 2003, in that TCI and Liberty Mutual's allocation of fault was forty percent (40%) of the damages awarded in the amount of $312,000. On December 12, 2003, Mr. Wilson filed this devolutive appeal. In addition to Mr. Wilson's assertion of eight assignments of error committed by the trial court, TCI and Liberty Mutual aver that the devolutive appeal filed by Mr. Wilson was not timely.

*596 DEFECT IN MOTION FOR APPEAL

First, TCI and Liberty Mutual seek the dismissal of this appeal due to a defect in the order of appeal. On October 24, 2003, the trial court judge signed the judgment. On November 3, 2003, TCI/Liberty Mutual filed a Motion to Amend the Judgment contending an ambiguity as to damages, but the motion was denied on November 5, 2003. TCI and Liberty Mutual contend that Mr. Wilson did not timely file a notice of appeal from the October judgment. They assert that Wilson mistakenly appealed the judgment dated November 5, 2003, instead of the October judgment and therefore, the appeal should be dismissed due to this defect. This argument is without merit.
An error misstating the date of judgment in a motion for appeal does not require dismissal where the: 1) appellant actually intended to appeal from a related judgment of the trial court; 2) errors assigned in brief on merits were adjudicated by a related judgment; or 3) parties were aware of which judgment appellant intended to appeal, and the appellee was not prejudiced by the error in date. Melara v. Government Employees Ins. Co., 00-1305, p. 2 (La.App. 5 Cir. 12/13/00), 777 So.2d 552, 554; Roger v. Roger, 99-765, pp. 3-4 (La.App. 5 Cir. 1/12/00), 751 So.2d 354, 356; and State, Dept. of Transportation & Development v. Estate of Summers, 527 So.2d 1099, 1102 (La.App. 1st Cir.1988).
Examination of TCI/Liberty Mutual's motion and Mr. Wilson's brief reveal the intent to appeal the judgment dated October 24, 2003. Additionally, the errors assigned by Mr. Wilson are based upon the October judgment. Neither TCI nor Liberty Mutual has demonstrated any prejudice. Accordingly, this assertion is without merit.

ASSIGNMENTS OF ERROR
In plaintiff's assignments of error, Mr. Wilson avers that both the jury and the trial court committed reversible errors. Mr. Wilson avers that the jury erred in its allocation of fault by assessing him with 40% contributory negligence and in assessing only 40% negligence to TCI. Mr. Wilson also asserts that the jury erred in awarding him general damages in the amount of $162,884 for injuries sustained as a result of the accident.
In addition to the aforementioned assignment of errors committed by the jury, Mr. Wilson also avers that the trial court erred by including a jury interrogatory allowing the jury to assess fault to an unidentified third party and the jury erred in assessing that unidentified third party with 20% fault.
Mr. Wilson also asserts that the trial court erred in refusing to admit into evidence the correspondence received from Liberty Mutual's claims adjuster; in prohibiting Mr. Wilson from seeking additional property and automobile rental reimbursement; and in disallowing a jury charge on the Sudden Emergency Doctrine.

QUESTIONS OF FACT
The majority of the issues presented in this appeal concern questions of fact, which may not be set aside absent manifest error or unless clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). When applying "manifest error" or "clearly erroneous" standards to a lower court's findings, the appellate court "must constantly have in mind that their initial review function is not to decide factual issues de novo." Id. However, if the appellate court finds an error, which violates this, standard, "it is required to redetermine the facts de novo from the entire record and render a judgment on the merits." *597 Id. Moreover, the Louisiana Supreme Court emphasized:
If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). The rationale for this standard of review is based upon the trial court's capacity to evaluate live witnesses and the allocation of trial and appellate functions. Rosell, 549 So.2d at 844.

ALLOCATION OF FAULT TO MR. WILSON AND TCI
Mr. Wilson asserts that the jury's allocation of fault in the amount of 40% to himself and TCI equally, was erroneous. Allocation of fault is a factual finding, which may not be disturbed unless it is clearly wrong or manifestly erroneous. Rosell, 549 So.2d at 844. Mr. Wilson contends that Louisiana traffic law, specifically La. R.S. 32:231, does not impose a duty to obey an obstructed traffic sign. Rather, he asserts that the duty of care should be imposed on Mr. Davis for parking in front of the stop sign, blocking its view to motorists. Additionally, Mr. Wilson avers he had no duty to obey an obstructed sign; thus, he contends that he should not be held contributorily negligent for failing to exercise due care in approaching the intersection absent prior knowledge of the obstruction.
Mr. Davis clearly violated La. R.S. 32:143 by parking in a manner so as to obstruct the stop sign. However, Mr. Wilson suggests this violation imposes a duty on TCI/Liberty Mutual, while La. R.S. 32:231(B) eliminates the duty the plaintiff has in the accident. We believe Mr. Wilson misconstrued the meaning of La. R.S. 32:231(B), which states:
No provision of this Chapter for which signs are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in a position and where it can be seen by an ordinarily observant person.
La. R.S. 32:231(B). The statute does not relieve the plaintiff of a duty. It simply states that no citation will be given for running the stop sign. Consistent with this statute, Mr. Wilson did not receive a traffic citation for this accident.
We find Mr. Wilson had a duty of care. Regardless of the obscured stop sign, he had a duty, when approaching an "uncontrolled intersection with a street of equal dignity," to determine if he could cross safely before proceeding into the intersection. Pepitone v. State Farm Mut. Auto. Ins. Co., 369 So.2d 267, 270 (La.App. 4th Cir.1979). Although the intersection of Third and Baronne was controlled by a stop sign, the obstruction of the stop sign made it appear as though it was "uncontrolled." Thus, Mr. Wilson could not have reasonably believed he possessed an "unqualified right of way." Id. As such, the driver should treat the intersection as if there were yield signs controlling the traffic. TCI had the burden of proving the contributory negligence of Mr. Wilson by showing he breached his duty of care. Mr. Wilson admitted to traveling between 15 and 20 miles per hour prior to the intersection and that he did not slow down as he approached and entered the intersection. Additionally, TCI claims the truck did not completely obstruct the stop sign.
On the other hand, Mr. Wilson suggests TCI failed to present evidence showing the visibility of the stop sign. However, TCI presented photographs showing the visibility of the stop sign through the cab window *598 of the TCI truck. Mr. Wilson maintains that the pictures, taken a month after the accident, may not accurately depict the visibility of the sign.
The jury may "consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed." Watson v. State Farm Fire and Cas.Ins. Co., 469 So.2d 967, 974 (La. 1985), quoting Uniform Comparative Fault Act, § 2(b). Due to the two differing opinions as to the visibility of the stop sign and the evidence of Mr. Wilson's minimal duty to cautiously approach an intersection, the jury's findings are reasonable. Even if we would weigh the photographs differently, we cannot reverse. Thus, considering the record before us, we cannot say the jury erred in assessing 40% contributory fault each to Mr. Wilson and TCI.

DEFICIENT DAMAGE AWARD
Mr. Wilson asserts that the jury erred in awarding him only $162,844 in general damages sustained as a result of the accident. Mr. Wilson allegedly sustained various injuries, including a herniated C5-C6 disc and an annular tear/bulge of the L4-L5 disc, six broken teeth, left shoulder pain, jaw pain, a contusion over the left ear, and various lacerations from the accident. His treatment consisted of physical therapy, an epidural steroid injection, lumbar surgery, and an anterior cervical fusion. Thus, he suggests the jury's award of $162,884.00 is deficient and excessively low for his injuries.
When reviewing general damages, we must review the trier of fact's discretion. We do not determine the appropriate award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993). Before disturbing the trial court's decision, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332, 334 (La.1976).
We find no such abuse of discretion in this case. The medical records from East Jefferson General Hospital document that Mr. Wilson suffered from back pain prior to the automobile accident subject of the instant case. Mr. Wilson made improvements under the care of Dr. Warren R. Bourgeois, III. In fact, Dr. Bourgeois stopped treating Mr. Wilson because of his improvement. However, after a skating incident worsened his condition, Mr. Wilson resumed medical treatment. The jury could infer that Mr. Wilson's prior back pain or the skating fall worsened his injuries. Based on these facts presented, the jury calculated Mr. Wilson's damages as $40,721 each for past and future physical pain and suffering and past and future pain and suffering.
Because we find no abuse of discretion and are not disturbing the jury's finding, we pretermit discussion of the adequacy of damages awarded by the trial court.

ALLOCATION OF FAULT TO THE UNIDENTIFIED THIRD PARTY AND JURY INTERROGATORY
Mr. Wilson further avers the jury erred in assessing twenty percent (20%) negligence to an unidentified third party and the trial court erred in including a jury interrogatory for the assessment of fault to a non-party.
In order to appeal an allegedly defective jury interrogatory, parties must object to or demand a jury interrogatory be submitted to the jury prior to the jury retiring. La. C.C.P. art. 1812(C). The appealing party's failure to do so waives his right to raise this issue upon appeal. Vaughan Contractors, Inc. v. Cahn, 629 So.2d 1225 (La.App. 4th Cir.1993). Mr. *599 Wilson did not object to or make a proffer prior to jury deliberations regarding the jury interrogatory in question; thus, we find he waived his right to object on appeal. However, if the jury instructions or interrogatories contain a "plain and fundamental" error, the contemporaneous objection requirement is relaxed and appellate review is permitted. Berg v. Zummo, 00-1699, p. 12 (La.4/25/01), 786 So.2d 708, 716. Thus, we must look to the validity of the jury interrogatory.
The Louisiana Code of Civil Procedure art. 1812(C) permits jury interrogatories regarding nonparties "if appropriate under the facts adduced at trial." La. C.C.P. art. 1812(C)(2)(a). Non-parties include those that are unknown. La. C.C.P. art. 1812(C)(2)(b)(ii). Additionally, it is within the trial judge's discretion to include a jury interrogatory referring to a possibly negligent non-party. Guidroz v. State, Through Dept. of Transp. and Development, 94-0253 (La.App. 1 Cir. 12/22/94), 648 So.2d 1361, 1365.
Due to the discretion of the judge in allowing a jury interrogatory in regards to a non-party and the evidence adduced at trial demonstrating Ms. Lavalois as a possibly negligent non-party, this is not representative of a "plain and fundamental" error. Thus, the interrogatory is not subject to appellate review. Regardless, the trial judge did not abuse his discretion by submitting the interrogatory to the jury because it is well within the letter of the law.
Mr. Wilson asserts that the jury erred in allocating 20% of the fault to the unidentified third person, non-party. Mr. Wilson avers that at the trial on the merits, there was an absence of evidence regarding the unidentified third party. However, the evidence established that it was Ms. Lavalois' automobile, which broadsided Mr. Wilson's truck. It is reasonable to conclude that the jury inferred that Ms. Lavalois could have helped prevent the accident.
Furthermore, based on the evidence presented, the jury may have concluded that Ms. Lavalois should have yielded to Mr. Wilson because although the two vehicles entered the intersection simultaneously, Mr. Wilson was the driver on the right side of the intersection, pursuant to La. R.S. 32:121.[2]
Accordingly, the jury's decision to find a nonparty 20% negligent in this accident is not manifestly erroneous. We find that the jury's allocation of fault to a third party is reasonable.

CORRESPONDENCE AND ADDITIONAL PROPERTY DAMAGES
Mr. Wilson asserts that the trial court committed error in refusing to admit into evidence the claims adjuster's correspondence regarding property damage and rental reimbursement by Liberty Mutual. The letters acknowledge ninety percent (90%) fault of TCI in causing the accident. He contends that the correspondence represents an unconditional tender as opposed to a settlement. In addition, he claims the letters represent unilateral tenders, not compromises, because he did not give consideration or make concessions.
*600 The trial court's exclusion of the letters is subject to an abuse of discretion standard of review. Libersat v. J & K Trucking, Inc., 00-00192, p. 11 (La.App. 3 Cir. 10/11/00), 772 So.2d 173, 179. As to the admittance of evidence, the Louisiana Code of Evidence provides:
[E]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, anything of value in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.
La. C.E. art. 408(A).
The letters clearly demonstrate settlement negotiations between Liberty Mutual and Mr. Wilson. In fact, one of the letters actually used the term "settlement" repeatedly. Additionally, the December 18, 2000 letter stated: "Liberty Mutual would not pay all property damage and rental reimbursement." Thus, Mr. Wilson made concessions when he accepted payment by not demanding additional money before accepting payment. Moreover, the March 7, 2001 letter from Mr. Wilson's attorney to Liberty Mutual included the statement: "we have settled the property damages portion for $3,910.11." Thus, by Mr. Wilson's own admissions, the letters represent a settlement. Hence, the trial judge properly excluded the correspondence.
Alternatively, Mr. Wilson asserts the letters are offered for purposes other than to prove liability. The Louisiana Code of Evidence does not prevent the inclusion of such evidence for other purposes such as "proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." La. C.E. art. 408(A). However, Mr. Wilson does not state a purpose other than showing TCI and Liberty Mutual's admittance of fault. Fault is not a purpose that permits introduction of a document containing settlement provisions. La. C.E. art. 408(A).
Lastly, Mr. Wilson contends the trial court erred by not allowing him to seek additional property damages and rental reimbursement from Liberty Mutual. He claims an additional $3,748.25 for stereo equipment and rental reimbursement, which the settlement of $3,910.11 did not cover.
We find no abuse of discretion in not admitting the letters because evidence related to settlement is inadmissible under La. C.E. art. 408(A). The plaintiff is precluded from seeking further property damages due to the plaintiff's settlement of his property damage claim, which is established by the letter from plaintiff's counsel that was proffered by defendant. Accordingly, the trial court did not err in precluding Mr. Wilson from seeking additional funds from the previously settled claims.

SUDDEN EMERGENCY DOCTRINE
Lastly, Mr. Wilson avers the trial court erred by refusing to instruct the jury on the Sudden Emergency Doctrine. Although broad discretion is given to the trial court in regards to the wording of jury instructions, La. C.C.P. art. 1792(B) mandates a trial court "give accurate and necessary instructions based on the facts and evidence of the case." Barbe v. A.A. Harmon & Co., 94-2423, 94-2424, p. 7 (La.App. 4 Cir. 1/7/98) 705 So.2d 1210, 1216. We have to consider the entirety of the charges and determine whether they adequately state the correct principles of law applicable to the issues raised by the pleadings and evidence. Clark v. Jesuit *601 High School of New Orleans, 96-1307, p. 7 (La.App. 4 Cir. 12/27/96), 686 So.2d 998, 1002. Thus, we must determine if the sudden emergency doctrine is applicable to the issues raised by the facts and evidence of the case sub judice.
The sudden emergency doctrine excuses a driver's negligent acts when the driver is confronted with an emergency situation that he did not aid in creating. Hickman v. Southern Pacific Transport Co., 262 La. 102, 114, 262 So.2d 385, 389 (La.1972). The Louisiana Supreme Court defines the doctrine as:
One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence.
Hickman, 262 La. at 112-113, 262 So.2d at 389. However, we have repeatedly refused to apply the doctrine where the party claiming the doctrine is also negligent. Clement v. Griffin, 91-1664, 92-1001, 93-0591 to 93-0597, 93-0648 (La.App. 4 Cir. 3/3/94), 634 So.2d 412, 439; Ducombs v. Nobel Ins. Co., 03-1704, p. 6 (La.App. 4 Cir. 6/21/04), 884 So.2d 596, 600. We reasoned the asserter would remain responsible for his negligence. Id.
In the case sub judice, Mr. Wilson asserts the darkness of the intersection, the obscured stop sign, his lack of familiarity with the intersection, and the heavy west-bound traffic from an apartment building caused him to find himself in a position of imminent peril. We disagree. Mr. Wilson mistakenly relies upon Thibodeaux v. St. Landry Parish Police Jury, 561 So.2d 163 (La.App. 3rd Cir.1990), to support his position that the Sudden Emergency Doctrine is applicable. However, Thibodeaux is not analogous to the present case. In Thibodeaux, the plaintiff was lured into an obstructed intersection. Id. at 167. In fact, that plaintiff did not know the intersection existed.
Conversely, Mr. Wilson knew he was approaching an intersection. He had a duty to determine if he could safely enter the intersection before proceeding. By his own admission, he did not slow his vehicle before entering. As such, the jury found him negligent in the accident. Therefore, we find that the trial court did not abuse its discretion by refusing to instruct the jury on the sudden emergency doctrine.

CONCLUSION
For the foregoing reasons, we affirm the findings of the trial court.
AFFIRMED.
TOBIAS, J., concurs in the result.
MURRAY, J., concurs in part, dissents in part, and assigns reasons.
TOBIAS, J., concurring in the result.
I respectfully concur in the result.
My analysis of the facts differs slightly from those of the majority, but I conclude that as a matter of law the majority is correct in the result that it reaches. Although La. R.S. 32:121 is not technically applicable to this case because the intersection was actually controlled by a stop sign, because the stop sign was obscured by the TCI, it appeared to Mr. Wilson that the intersection uncontrolled. Therefore, Mr. Wilson's duty was to proceed as one would at an uncontrolled intersection. In this context, I cannot say that the result is clearly wrong or manifestly erroneous.
*602 MURRAY, J., concurring in part, dissenting in part.
I respectfully concur with the opinion in all respects except for the assessment of fault to the non-party, Terecita Lavalois. Although La. C.C.P. art. 1812 authorizes a trial court to submit a jury interrogatory to quantify a non-party's fault, this article conditions that authority on a finding that it be "appropriate under the facts adduced at trial." La. C.C.P. art. 1812(C)(2)(a). Construing the limitation that it be "appropriate," the Louisiana Supreme Court in Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496, p. 7 (La.6/30/95), 657 So.2d 975, 980, stated that it means there must be evidence from which reasonable minds could conclude that the non-party was at fault. Id.; see also Bruce v. Rogers Oil Tool Services, Inc., 556 So.2d 922, 925 n. 2 (La.App. 3 Cir.1990)(noting that submitting special interrogatory is inappropriate when there is no evidence of comparative fault). Such is not the case here.
The evidence regarding the non-party, Ms. Lavalois, simply indicates that she was the driver of the vehicle who was proceeding down the street that had the right of way and that her vehicle collided with the side of Mr. Wilson's vehicle. In finding the evidence in the record sufficient to support a finding of fault on the part of Ms. Lavalois, the majority reasons that it was established that her vehicle broadsided Mr. Wilson's vehicle and that "[i]t is reasonable to conclude that the jury inferred that Ms. Lavalois could have helped prevent the accident." The record, however, does not contain sufficient evidence from which reasonable minds could reach that conclusion. It was thus not appropriate to submit the special interrogatory regarding non-party fault to the jury.
The majority cites La. R.S. 32:121(A) as establishing that Ms. Lavalois as the driver of the vehicle on the left was required to yield the right of way to the vehicle on the right, Mr. Wilson's vehicle, when approaching an uncontrolled intersection. However, the intersection at which the accident occurred was not an uncontrolled intersection; it had a stop sign and Ms. Lavalois was on the favored street. I, therefore, believe the majority's reliance on this statute is misplaced.
In sum, I would find the trial court erred in submitting the interrogatory regarding non-party fault to the jury. I, therefore, dissent in part.
NOTES
[1] Upon a Motion for Directed Verdict, the trial judge dismissed Ryder.
[2] La. R.S. 32:121 provides:

A. When two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left, shall yield the right of way to the vehicle on the right.
B. The right of way rule declared in Subsection A is modified at through highways and otherwise as hereinafter stated in this part