TERRI F. LOVE, Judge.
 

 _JjThis appeal arises from an accident along a Mardi Gras parade route. The trial court held that all of the parties sued were immune from liability pursuant to La. R.S. 9:2796, the Mardi Gras Immunity Statute. We find that the trial court erred in that all of the sued entities are not granted immunity as they were not functioning as a Mardi Gras parade crew as intended by the statute. Further, we find that a genuine issue of material fact exists as to Pygmalion’s alleged vicarious liability. However, we find that no genuine issue of material fact exists as to the alleged gross negligence of Bards and affirm. Accordingly, we affirm in part; reverse in part; and remand for further proceedings.
 

 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 Michael and Kim Duplantier (“Duplanti-ers”) allegedly suffered injuries during a 2005 Mardi Gras parade (“Parade”) by Paidia Club, Inc. d/b/a Bards of Bohemia (“Bards”), when the top of their float struck a tree limb causing a piece of the float to break free and strike the Duplanti-ers. Bards entered into a contract for the rental of floats, tractors, generators, drivers, a property truck, and manpower to solve problems arising during the parades from the Krewe of Pygmalion (“Pygmalion”). During the Parade, the float the Duplantiers were riding on | ^suffered a flat tire and was pulled from the parade. Following the tire repair, the New Orleans Police Department (“NOPD”) escorted the float back to the parade route. As the float approached the rear of the Parade, its route was blocked by street sweepers
 
 *572
 
 and other clean-up vehicles. The NOPD officers directed the clean-up vehicles to the edge of the street and directed the tractor driver pulling the float to go around the clean-up vehicles. The top of the float struck a tree limb, as it was attempting the re-enter the Parade, and dislodged, allegedly injuring the Duplanti-ers.
 

 The Duplantiers commenced this action by filing their petition for damages against Bards, Pygmalion, the NOPD, Entergy Corporation (“Entergy”), Lloyd’s of London Insurance Company (“Lloyd’s”), and several unidentified parties. Bards answered the petition, denying liability, specifically pleading the benefit of the Mardi Gras Immunity Statute, La. R.S. 9:2796 (“MGIS”). The Duplantiers amended their petition to add American Sentinel Insurance Company (“Sentinel”), Scottsdale Insurance Company (“Scottsdale”) and Anthony Culotta (“Mr.Culotta”), an independent contractor retained by Pygmalion to direct and supervise the tractors and tractor drivers.
 

 The trial court granted a motion and order for dismissal of the Duplantiers’ claims against Entergy without prejudice. Following a settlement with Lloyd’s for $5,000, the trial court granted a partial dismissal of Lloyd’s with prejudice.
 

 Bards then filed a motion for summary judgment alleging immunity under the MGIS, which the district court granted. Pygmalion and Scottsdale then filed motions for summary judgment also alleging immunity. The trial court granted both summary judgments and judgments were issued on separate days. The Duplantiers filed an appeal of Bards’ summary judgment and the Scottsdale ^summary judgment and the appeals were consolidated. However, the motion for appeal does not appeal the motion for summary judgment granted in favor of Pygmalion.
 

 DEFECT IN MOTION FOR APPEAL
 

 The Duplantiers first appealed the summary judgment granted in favor of Bards on June 25, 2007. Then, the Du-plantiers appealed the summary judgment granted in favor of Scottsdale on October 25, 2007. However, neither the motion and order for appeal, nor the motion and order for consolidation of the appeals references the October 29, 2007 judgment, which granted Pygmalion’s summary judgment. This Court has held that although inaccurate, the appeal may proceed as if the Duplantiers appealed the three judgments because the record reflects that all parties thought the subject matter of the three judgments were being appealed and that none of the appellees were prejudiced by the mistake.
 
 [1]
 

 STANDARD OF REVIEW
 

 “Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends.”
 
 King v. Parish Nat’l Bank,
 
 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545,
 
 quoting
 
 La. C.C.P. art. 966(A)(2). An appellate court reviews a district court’s decision granting summary judgment
 
 de novo,
 
 using the same standard applied by the trial court in deciding the motion for summary
 
 *573
 
 judgment.
 
 Schmidt v. Chevez,
 
 00-2456, p. 4 (La.App. 4 Cir. 1/10/01), 778 So.2d 668, 670. Under this standard, summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, | together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
 

 IMMUNITY
 

 The Duplantiers contend that the MGIS provides no immunity for entities for hire, who are neither members of the parade krewe nor spectators.
 

 At issue is whether the defendants are immune from liability based on negligence under La. R.S. 9:2796, which provides in part:
 

 A. Notwithstanding any other law to the contrary, no person shall have a cause of action against any krewe or organization, any group traditionally referred to as Courir de Mardi Gras, or any member thereof, which presents Mardi Gras parades, including traditional rural Mardi Gras parades, processions, or runs in which participants ride on horseback, march, walk, or ride on horse-drawn or motordrawn floats, or wheeled beds, or other parades, whether held on a public or private street or waterway, or in a building or other structure, or any combination thereof, connected with pre-Lenten festivities or the Holiday in Dixie Parade, or against any nonprofit organization chartered under the laws of this state, or any member thereof, which sponsors fairs or festivals that present parades or courirs, for any loss or damage caused by any member thereof, during or in conjunction with or related to the parades or courirs presented by such krewe or organization, unless said loss or damage was caused by the deliberate and wanton act or gross negligence of the krewe or organization, or any member thereof as the case may be, or unless said member was operating a motor vehicle within the parade or festival and was a compensated employee of the krewe, organization, or courir. The provisions of this Section shall not be intended to limit the liability of a compensated employee of such krewe or organization for his individual acts of negligence. (Emphasis added).
 

 If a law is clear and unambiguous, it must be applied as written as long as it | sdoes not result in absurd consequences. La. C.C. art. 9. Additionally, a statute that grants immunity, like the MGIS, “must be strictly construed against the party claiming the immunity or advantage.”
 
 Medine v. Geico Gen. Ins. Co.,
 
 97-2398, p. 4 (La.App. 4 Cir. 11/17/99), 748 So.2d 532, 535. In interpreting the MGIS, this Court stated that: “[tjhis statute absolves krewes from liability for injuries caused by objects thrown to parade spectators, except in extreme and unusual circumstances.”
 
 Duryea, v. Handy,
 
 96-1018 (La.App. 4 Cir. 10/3/97), 700 So.2d 1128, 1126. “[A] ‘compensated employee of such krewe or organization’ is excepted from this statutory immunity even if he would otherwise qualify.”
 
 Daniel v. Blaine Kern Artists, Inc.,
 
 96-1348 (La.App. 4 Cir. 9/11/96), 681 So.2d 19, 21. “By ‘krewe or organization’ the statute refers to the group sponsoring and participating in the parade, not groups that are employed to help to construct the parade, etc. on a compensated basis.” Id. at 21-22.
 

 This Court, in
 
 Medine,
 
 held that a “literal interpretation of 9:2796 would be to grant blanket immunity to covered organizations and their members for their negligence.” 97-2893, p. 4, 748 So.2d at 535.
 
 *574
 
 Further, this Court discerned that the legislature intended:
 

 to provide that no spectator would have a cause of action against any person or his insurer who is connected with presenting Mardi Gras parades or other pre-Lenten activities unless the spectator’s loss or damage was caused by the deliberate and wanton act of the person connected with the activities.
 

 Id.
 
 Lastly, this Court limited the scope of the MGIS and found that it did not apply to situations involving “plaintiffs who were not parade spectators and were not even in the vicinity of the official parade route.”
 
 Medine,
 
 97-2393, p. 5, 748 So.2d at 536.
 

 | ^Likewise, this Court, in
 
 Daniel,
 
 held that an entertainment firm, which entered into a contract with a sponsor of the Bacchus parade, and a tractor company, whose tractor was used by the firm to pull a float in the parade, were not entitled to immunity under the MGIS.
 
 Daniel,
 
 96-1348, 681 So.2d at 21. In
 
 Daniel,
 
 an action was brought by an individual who was injured when she was struck by a tractor during a parade.
 
 Daniel,
 
 96-1348, 681 So.2d at 20. This Court analyzed the relationships giving rise to immunity under the MGIS as follows:
 

 This court finds that defendants are not immune. Kern and Diesel Tractor are compensated contractors who contracted to provide goods or services to a “krewe or organization which presents Mardi Gras parades.” Neither Kern nor Diesel Tractor is a “krewe” as that term is used in Mardi Gras parlance. The term “organization” in the statute is equivalent to “krewe” and is not intended to be broad enough to apply to those who contract with a “krewe or organization.” Just because a company, corporation or individual provides goods or services to an organization which presents Mardi Gras parades, does not make that company, corporation, or individual a “presenter” of Mardi Gras parades under the statute. By “krewe or organization” the statute refers to the group sponsoring and participating in the parade, not groups that are employed to help to construct the parade, etc. on a compensated basis.
 

 Id.,
 
 96-1348, 681 So.2d at 21-22.
 

 This Court also noted in
 
 Daniel.
 

 [I]t is possible that a “member” of the ‘krewe or organization’ could also deal with that organization in a separate capacity of contractor. In such a situation it would have to be determined whether the act(s) giving rise to the claim for liability arose out of that member’s actions in his capacity as a ‘member’, in which case he would be immune, or whether his actions arose out of his capacity as a compensated contractor, in which case he would not be immune from liability based on negligence.
 

 96-1348, 681 So.2d at 22, n. 2. Lastly, this Court held that the immunity granted by the MGIS is limited to “non-profit corporations or persons not working for ^compensation.” Id., 96-1348, 681 So.2d at 22.
 

 We find that the case
 
 sub judice
 
 is analogous to
 
 Daniel.
 
 Although Pygmalion operates as a krewe during the Mardi Gras Season, presenting a Mardi Gras parade, Pygmalion did not act in that capacity in conjunction with Bards. Instead, Pygmalion was a compensated contractor, like the entertainment firm in
 
 Daniel,
 
 that contracted to provide goods or services to Bards, a “krewe or organization which presents Mardi Gras parades.” Thus, the injurious actions arose out of Pygmalion’s capacity as a compensated contractor. Given that, we find that Pygmalion is not shielded by the MGIS.
 

 
 *575
 
 Similarly, we find that Mr. Culot-ta’s actions arose out of his capacity as a compensated contractor. Bards contracted with Pygmalion for float di’ivers, tractors, and the services of Mr. Culotta. Mr. Culotta was to maintain Pygmalion’s floats, service and repair the floats, coordinate the floats at the parade, and direct and supervise the drivers. Mr. Culotta also delivered floats, drivers, and generators for Pygmalion. Therefore, as a matter of law, Mr. Culotta is not immune from liability based on negligence under the MGIS.
 

 However, as to Bards’ immunity under the MGIS, we find that Bards was acting within its capacity as a non-profit organization presenting the Mardi Gras parade, which is provided with immunity.
 

 VICARIOUS LIABILITY
 

 The Duplantiers also alleged that Pygmalion was vicariously liable for Mr. Culotta’s actions. As the moving party on the motion for summary judgment, Pygmalion bore the burden to prove that the Duplantiers would not be able to establish vicarious liability.
 

 Mr. Culotta stated in his deposition that Pygmalion directed his actions as | follows:
 

 Q. Okay. Mr. Carlone from Bards, is he directing you in any way or are you responsible to him in any way?
 

 A. Well, I imagine I’m responsible to everybody, even the riders, but Mr. Car-lone doesn’t give me my orders. I get my orders from the man that owns Pygmalion.
 

 Q. Okay.
 

 A. And he gets his orders from Mr. Don Carlone or whoever rents the floats from him.
 

 Q. All right, so the chain of command, as you understood it, for actions and inactions, was Don Carlone would tell the owner of Pygmalion, then he, the owner of Pygmalion, would tell you. Is that what you said?
 

 A. Yes, sir it’s formation, protocol. I can’t deal directly with everybody.
 

 Bards’ contract with Pygmalion required Pygmalion to provide tractors, maintenance, supervision, generators, drivers, and floats. Mr. Culotta further testified regarding his actions prior to the accident.
 

 Q. You couldn’t tell if it was too — it would be too low to hit the float?
 

 A. Sure, I could tell.
 

 Q. Did it look too low to you?
 

 A. Yes, sir.
 

 [[Image here]]
 

 Q. What action did you take, if any, to let the driver or anybody else know that that tree was hanging too low, that tree limb?
 

 A. Nothing I could do when it happened, Counselor. I was in another vehicle. I could not get to the driver on that one. But when it struck, he stopped.
 

 Q. But what I’m saying is, you’re behind the float.
 

 A. Correct.
 

 Q. Is it your testimony that you never attempted to warn the driver or anybody else that that branch was overhanging?
 

 [[Image here]]
 

 Q. Did you honk your horn?
 

 [[Image here]]
 

 A. No, I did not honk my horn.
 

 [[Image here]]
 

 Q. Before, when you saw it before the accident, what made you think that the limb would strike the float?
 

 A. Because the limb was hanging too low. All of my 19experience of visual eye contact told me that something was going to happen with that limb. Like I said, other parades have hit those trees,
 
 *576
 
 too. It’s beginning to be a constant thing on these parade routes, because these trees are old and the City doesn’t want you cutting them.
 

 While Pygmalion presented the testimony of Jack Rizzuto, the corporate representative for Pygmalion, asserting that the NOPD controlled all movement of the floats, it failed to present absolute refutation testimony of Pygmalion’s alleged control of Mr. Culotta. No evidence in the record demonstrates that the NOPD prevented Mr. Culotta from warning the float’s tractor driver. Therefore, we find that a genuine issue of material fact exists as to whether Mr. Culotta was an independent contractor and remand to the trial court for further proceedings.
 

 GROSS NEGLIGENCE
 

 Lastly, the Duplantiers aver that the actions of Mr. Culotta, Pygmalion, and Bards were grossly negligent. However, given that we determined that the MGIS does not provide immunity to Pygmalion and Mr. Culotta, this argument is moot as to all parties except Bards.
 

 Gross negligence is the “‘want of even slight care and diligence’ and the “want of that diligence which even careless men are accustomed to exercise.’ ”
 
 Brown v. Lee,
 
 05-1302, p. 5 (La.App. 4 Cir. 4/5/06), 929 So.2d 775, 778,
 
 quoting Pierre v. Zulu Social Aid & Pleasure Club, Inc.,
 
 04-0752, p. 6 (La.App. 4 Cir. 9/29/04), 885 So.2d 1261, 1264.
 

 Mr. Culotta stated that he saw that the float was going to hit the tree limb, but that he did nothing to attempt and notify the tractor driver. Given that the deposition testimony presented shows that Bards was unaware of the hanging tree limb and that the members of Bards were following the instructions of the NOPD, the record is devoid of evidence of gross negligence on the part of Bards.
 

 |
 
 ^DECREE
 

 For the above mentioned reasons, we find that the trial court erred in finding that Pygmalion and Mr. Culotta were immune from liability for the Duplantiers’ injuries. Further, we find that a genuine issue of material fact exists as to Pygmalion’s alleged vicarious liability. However, we find that no genuine issue of material fact exists as to the alleged gross negligence of Bards and affirm. Accordingly, we affirm in part; reverse in part; and remand for further proceedings.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 [1]
 

 . An error misstating the date of judgment in a motion for appeal does not require dismissal where the: 1) appellant actually intended to appeal from a related judgment of the trial court; 2) errors assigned in brief on merits were adjudicated by a related judgment; or 3) parties were aware of which judgment appellant intended to appeal, and the appellee was not prejudiced by the error in date.
 
 Wilson v. Transp. Consultants, Inc.,
 
 04-0334, p. 4 (La.App. 4 Cir. 3/2/05), 899 So.2d 590, 596.